Weight, J.
 

 delivered the opinion of the court. This case-involves the consideration of two questions, either of which, if determined against the defendant in error, would defeat'his re covery. 1st. Whether, under their covenant to make all necessary repairs to the gate, the duty of rebuilding or replacing il devolved in law upon the Beaches. 2d. Whether the forme! suit is a good bar to the present action.
 

 
 *93
 
 1. It is to be observed' that the Beaches covenant in express terms to make
 
 all necessary repairs
 
 to the gate, and in passing and repassing it to use common care in having it shut after them. In the contemplation of the parties, the gate was to be erected and maintained for the protection of Crain, whilst the Beaches enjoyed the right of way across his lands. It is a familiar principle that in determining the meaning of a contract, the subject matter,- and the situation and true intention of the parties, are to be considered. In this case, Crain released to the Beaches and one Van Horn, and to their heirs and assigns, a right of way or road forever through his lands ; and as a part of the agreement to be performed by him, it was provided that he should erect a good and substantial gate at the terminus of such road. As I read the contract, Crain bound himself no farther: but it was obviously the intention of the parties that the gate so erected should be maintained and kept up during the enjoyment and use of the road, unless Crain should assent to its discontinuance or removal. To effectuate this intention, the Beaches covenanted that “ all the repairs necessary to be made to said gate should be made by them, and that in passing and repassing it they should use common care to shut it after them.” They covenanted therefore generally to repair; and I think the reasonable construction of the contract is, that they are to make not only ordinary repairs, but all that are necessary to maintain and keep up the gate fit for use, and for the purpose intended, during the pleasure of Crain, and that should it be removed without the knowledge or agency of Crain, or destroyed in whole or in part by dilapidation or accident, they are to replace or repair it. This construction seems to be in accordance with the intent and spirit of the contract, and is in harmony with the construction placed upon similar covenants in numerous adjudged cases. Indeed, it has always been adjudged that upon a covenant to repair, the covenantor is bound to rebuild a house accidentally destroyed by fire or thrown down by enemies during his term.
 
 (Bro. Cov. 4; Paradine
 
 v.
 
 Jane, (All.
 
 27,)
 
 Dyer,
 
 33
 
 a, pl.
 
 10;
 
 Earl of Chesterfield
 
 v.
 
 Duke of Bolton, Com. Rep.
 
 627;
 
 Walton
 
 v.
 
 Waterhouse,
 
 2
 
 Saund. R. 422, a. note; Bullock
 
 v.
 
 Dommitt,
 
 6
 
 T. R.
 
 650;
 
 Phillips
 
 v.
 
 Ste
 
 
 *94
 

 vens,
 
 16
 
 Mass. R.
 
 238.) It was contended on the argument, however, that these were cases between landlord and tenant, and that the reason alleged for the construction was only applicable to that peculiar relation : but the principle was applied in the case of the
 
 Brecknock Company
 
 v.
 
 Pritchard,
 
 (6
 
 T. R.
 
 750,) where the defendant on a covenant to keep a bridge in complete repair for seven years, was held liable to rebuild, the bridge having been washed away by an extraordinary and unusual flood of water. The counsel for the defendant, in that case, made the point that is now made here, that the cases to sustain the doctrine that a covenant to repair obliged the party covenanting to rebuild, were between landlords and tenants, and that in the case of
 
 Paradine
 
 v.
 
 Jane, it
 
 was mentioned as one of the reasons for the judgment of the court, that as the tenants are entitled to -the casual profits, they ought to be held liable to the casual losses. But the court took no notice of the distinction attempted to be drawn by counsel, and Lord Kenyon, in giving judgment, adopted the true distinction taken in the books, viz: “ When the law creates a duty and the party is disabled to perform it without any default in him, and he has no remedy over, the law will excuse him; but when the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract.” Although
 
 the
 
 covenant in. the last mentioned case was “ to keep the bridge in complete
 
 repair
 
 for seven years/’ no one doubted that it involved the rebuilding of it in the event of its destruction during that time. The covenant of the Beaches in the case under consideration is substantially to keep the gate in repair, whilst it is the pleasure .of Crain
 
 that it
 
 should remain. Had they chosen
 
 to
 
 narrow the effect of their covenant, they might have done so, by excepting from the operation of their contract the identical duty or charge they are now asked to
 
 perform.
 

 It has been seen that the covenant to repair, .has been uniformly construed as importing thé duty to rebuild ; but the counsel for the plaintiffs in error insists, that the covenants in the cases on which this doctrine is founded contained words of
 
 *95
 
 broader and more comprehensive signification than the word “
 
 repair”
 
 singly imports—they were “ to repair,
 
 uphold, support, maintain,
 
 amend, and keep the demised premises, or to deliver them at the end of the term in the same state as when taken, or equivalent language.” It is not perceived that these superadded words in the precedents enlarge the obligation or duty to be performed by the party covenanting, nor has any adjudged case ever maintained that they do. The covenant is essentially one to repair. But is the counsel strictly accurate as to his facts ? I have looked at two of the cases which he cites. The covenant in the case of
 
 Bullock
 
 v.
 
 Dommitt,
 
 (6
 
 T. R.
 
 650,) was not
 
 “to
 
 uphold, support, maintain, amend and keep the demised premises,” but “ to repair, uphold, support, maintain, amend and keep the premises,
 
 in needful and necessary repair”
 
 So also, in
 
 Walton
 
 v.
 
 Waterhouse, (2
 
 Saund.
 
 R. 422, a,)
 
 the covenant was “ to repair, support, uphold, maintain, amend and keep the dwelling house
 
 in good and sufficient repair.”
 
 These are covenants to repair, and nothing more; and the duty is not enlarged by the additional words. Should we hold that the Beaches were not bound
 
 to
 
 rebuild or replace the gate, we would necessarily overrule a long line of adjudged cases.
 

 2.
 
 Is the present action barred by a former recovery ? The covenant of the Beaches is a continuing covenant. Their obligation is to repair the gate as often as repairs are needed, and they cannot discharge themselves from the effect of their contract, or change the rights of the parties, by a mere refusal to perform. In other words, they cannot by such refusal put at an end, for all future time, the duty imposed upon them by their covenant. Indeed, the counsel for the plaintiff in error admits, that if Crain should replace the gate, the covenant of his clients may again become operative; thus, by his admission, negativing the idea that the refusal to rebuild or replace, worked, under the circumstances of this case, a total and final breach of the covenant, insomuch that the measure of damages in the former suit was, or should have been, the cost of erecting a new gate, and such sum as would be necessary to keep it in repair during the period that Crain should desire it to be kept up.
 
 *96
 
 Neglecting, at any time, to make necessary repairs to the gate, or to shut it in passing or repassing, would have been a partial breach of their covenant, and Crain could have recovered damages for any injury necessarily resulting therefrom. So for a like neglect, damages might be recovered, for injuries accruing subsequently to the former action. It is not perceived, therefore, how a refusal to repair could change the obligations or rights of the parties, or introduce a new and different rule of damages. To constitute an effectual bar, the cause of action in the former suit should be identical with that of the present. It is the same cause of action when the same evidence will support both the actions, although they happen to be grounded on different writs.
 
 (Rice
 
 v.
 
 King,
 
 7
 
 John.
 
 20.) But the evidence in both actions may be
 
 in part
 
 the same; yet the subject matter essentially different, and in such case there is no bar. For example, if money be awarded to be paid at different times, assumpsit will lie on the'award for each sum as it becomes due. So, on an agreement to pay a sum of money by instalments, an action will lie to recover each instalment as it becomes due. In covenant for non-payment of rent, or of an annuity payable at different times, the plaintiff may bring a new action
 
 totiés quoties
 
 as often as the respective sums become due and payable ; yet in each of these examples, the evidence to support the different actions is in part the same. In this case the same covenant was the foundation of both actions ; the same evidence, therefore, in part, is alike common to both: but there is this difference: in the former suit the breach was assigned, and the actual damages laid as having accrued prior to the commencement thereof; in the present, damages are sought to be recovered for a breach subsequent to such former action. In the present action, the plaintiff could not have recovered for damages that had accrued prior to the first suit, for he is not permitted .to split up an entire demand, and bring several suits thereon; but 'he may show a breach subsequent to the former suit, and recover the actual damages arising from such subsequent breach. On the last trial, a breach of the covenant to repair subsequently to the former action was admitted, and for this Cram was entitled to recover nominal damages, with such
 
 *97
 
 actual damages as could be shown to have accrued from such breach since the former recovery. This must necessarily be the effect of a continuing covenant. The former recovery, therefore, could be no bar to the present suit.
 

 The plaintiffs in.error.insist that Crain did recover, or legally should have recovered, in the first suit, a sum sufficient to enable him to replace the gate. But this argument supposes that upon the Beaches’ refusing to repair, there was a total breach of their covenant, and that they could relieve themselves from subsequent obligation by the payment of a gross sum in damages. If this were so, Crain’s recovery should also have embraced a sum sufficient to keep the gate in necessary repair whilst it was his pleasure that it should remain: a sum that I imagine there would be insuperable difficulty to estimate. Whilst the obligation of the plaintiffs in error continued, and it was entirely practicable for them to perform, I do not well see how the value of a new gate could have legitimately formed a part of the damages to be recovered under the pleadings and evidence in the first suit.' It is possible, that if Crain, for the protection of his lands, and with the view of making the default of the Beaches the least expensive to them, had, prior to such suit, rebuilt or replaced the gate, he might have recovered the cost thereof in the shape of damages. But it is enough to say that no such thing was done; neither did the law devolve upon him a duty which the plaintiffs in error had covenanted to perform, and which in its performance was neither difficult nor impracticable. As a matter of fact, it is obvious from the pleadings and evidence in the first suit, and the amount of the judgment therein, that the cost of erecting a new gate was not recovered; as a matter of law, under the circumstances of this case, it ought not to have been.
 

 I am of the opinion that the judgments of the justice and common pleas should be reversed, and that of the supreme court affirmed. ,
 

 Judgment affirmed.1