EDWIN F. ABELL and GEORGE W. ABELL, Executors and Trustees of ARUNAH S. ABELL *vs.* JOHN W. S. BRADY, Executor of ANNIE F. BRADY and Administrator of ALAN PROCTOR BRADY.

*Executors and Trustees—Commissions—Cestuis que trust —Ordinary expenses—Betterments.*

Executors directed within a reasonable time after testator's death, to set apart a designated portion of both his personal and real estate, and hold the same in trust to collect the income thereof and pay the same to his five daughters, so long as any one of them shall survive, have no right to collect such income as executors after the expiration of the time limited by law for the settlement of the estate, and to receive commissions thereon as executors, and also as trustees after they have transferred to themselves in that capacity the income collected.

Where an estate is large, requiring not only time and labor, but the exercise of sound judgment in its management, especially in the development of unimproved city and suburban property, a commission of five per cent. to the two trustees for collecting and paying over an annual income of $160,000 to the beneficiaries, is a fair and liberal compensation.

Where executors of a large estate have been allowed a commission of two per cent. on the income collected by them within the time allowed by law for the settlement of the personal estate, an additional commission of three per cent. to them as trustees for its disbursement among the *cestuis que trust* is a just compensation.

Devisees of the income of a trust estate are properly chargeable only with ordinary expenses and repairs, and not with improvements in the nature of betterments—such as constructing partitions in warehouses for the special accommodation of tenants; boilers and engines and furnaces for heating; elevators, gas machines, asphalt pavements, and the opening and widening of streets adjacent to the property.

APPEAL from the Circuit Court of Baltimore City.

The order of the 18th of May, 1893, was signed by Judge DENNIS, and the order of the 11th of July, 1893, was

signed by Judge RITCHIE. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE and BOYD, J.

*Richard M. Venable,* and *John Prentiss Poe, Attorney General,* for the appellants.

*Charles J. Bonaparte,* and *William A. Fisher,* for the appellee.

ROBINSON, C. J., delivered the opinion of the Court.

In the former appeal, involving the construction of the will of the late A. S. Abell, the Court decided, that the trust created by the sixteenth clause continued so long as any one of the five daughters of the testator shall survive. And the Court also decided, that the daughters were entitled to the net income from the five-eighths part of the real and personal estate devised in trust, from the time of the testator's death, without any deduction for the payment of debts, legacies or costs of administration, all of which were to be paid out of the cash on hand and debts due the estate, and, if these should be insufficient, then out of the *corpus* of the *personal estate. Abell vs. Abell,* 75 *Md.,* 44.

The case being remanded, the appellants, as executors and trustees, on the 4th March, 1892, filed their accounts, showing the receipts and disbursements by them in each of these capacities. These accounts were referred to the special auditor, and he, on the 2d April, filed his report and account, to which both the appellants and appellee excepted. Testimony was then taken, and, the Court having passed on these exceptions, the matter was referred to the auditor to state an account in conformity with the views

of the Court. From the order of the 11th of July, 1893, ratifying this account as thus stated, and from the order of 18th May, 1893, referring the matter to the auditor, both parties appealed.

The testator died in April, 1888, and the net income received by the executors from the personal estate from that time up to December, 1891, a period of three years and eight months, amounted to $451,870.10, and upon this sum they were allowed commissions as executors. The income thus collected by them as executors, they transferred to themselves as trustees, and they now claim as trustees, a commission on the same fund on which they had been allowed commissions as executors.

The fundamental error which pervades not only the first account filed by the auditor, but the final account, also, which was ratified by the Court, is the assumption that the income from the five-eighths part of the personal estate which was devised in trust for the daughters, and which was collected by the executors from the testator's death in April, 1888, to 31st December, 1891, was rightfully collected by them as executors. Now, if there is a principle of testamentary law settled beyond controversy in this State, it is, that, where the same person is both *executor and trustee,* under a will, the law will adjudge the fund to be in his hands, in the capacity of trustee, after the time limited by law for the settlement of the personal estate; and this, too, whether he has or has not passed his final account in the Orphans' Court, for the reason that that which the law has enjoined upon him to do, shall be considered as having been done, and from that time he holds the fund by operation of law in that character which he would be entitled to receive it upon a final completion of his trust as executor. This we have said in *Hanson and wife, et al. vs. Worthington et al.,* 12 *Md.,* 418, and in *State, use of Gable et al. vs. Cheston and Carey,* 51 *Md.,* 352 ; and the same principle is fully recognized in *Seegar*

*vs. State,* 6 *H. & J.,* 162, and *Watkins' admrs. vs. State, use of Shaw, &c.,* 2 *G. & J.,* 220.

And it is equally well settled, that one who sustains this twofold relation cannot, of his own election, continue to act in the capacity of executor after the time allowed by law for the settlement of the estate, has elapsed, " and after the arrival of the period when he ought to have acted as trustee and discharged his duties pertaining to that capacity." *Gable's case,* 51 *Md.,* 352. And this rule of law applies with the greater strictness in this case, for the reason that the testator, by the sixteenth clause of his will, directs that the executors shall, within a reasonable time after his death, set apart five-eighths of both the personal and real estate, and hold the same in trust to collect the income thereof, and pay the same to his five daughters, so long as any one of them shall survive. The executors, it appears, in October, 1888, passed their first administration account, and, after the payment of debts, legacies and costs of administration, there remained in their hands the sum of $2,650,382.92. Why they did not set apart five-eighths of the *personal* estate thus devised to them in trust after the passage of this account, or at least after the expiration of the time limited by law for the settlement of the estate, does not appear. Be that as it may, they had no right after that time, to collect the income from the trust estate as executors, and the law will treat the income received by them after that time as having been collected in their capacity as trustees. And upon this basis the auditor's account ought to have been stated. · Assuming, then, that the net income collected by the executors from the trust estate during the thirteen months allowed by law for the settlement of the estate was in fact transferred to themselves as trustees, and that the income after that time was collected by them as trustees, and not as executors, we come to the question as to the commissions to be allowed as compensation for the services thus rendered, and to be rendered

by them hereafter, as trustees. It can hardly be necessary to say that in England no allowance is made, by way of compensation, to one holding a fiduciary relation for services rendered by him in the discharge of his duty as trustee, unless the instrument creating the trust provides for the payment of compensation. The principle on which the rule is founded, it has been said, is that he shall not make a profit out of his trust; and the reason of the principle is that he shall not be placed in a position where his interest may be opposed to his duty. The office of a trustee was considered as being one of honour and conscience, and, having been selected by reason of some special confidence arising from the ties of kindred or friendship, he was presumed to have accepted it voluntarily from a sense of duty, and not with a view to pecuniary gain or profit. And in the early case of *Green vs. Winter*, 1 *John. Ch.*, 26, that eminent jurist, Chancellor KENT, declared that even were he free from the weight of English authority, he should hesitate greatly before he undertook to question the policy or wisdom of the rule. This rule, however, with the exception of two or three States, has never been adopted in this country. From the earliest legislation, provision was made for an allowance of commissions to executors and guardians, and by analogy to these statutes, Courts have deemed it just and equitable to allow compensation to a conventional trustee for actual services rendered by him in the execution of his trust. As far back as *Ringgold vs. Ringgold*, 1 *Harris & G.*, 45, decided in 1826, after the fullest consideration, for it was a case of importance, and argued by the most distinguished lawyers in the country, the Court held that, by an equitable construction of the statutes allowing commissions to executors, administrators, and guardians, and the principles upon which these statutes are based, compensation ought to be allowed to a conventional trustee, as a reasonable and just indemnity for services rendered by him in the discharge of his duties as trustee.

Abell *vs.* Brady.

And in trusts of this kind, the rule ordinarily is to allow five per cent. upon the income. But this rule is by no means an inflexible rule. In prescribing the rate of commissions, Courts will take into consideration the nature and character of the trust estate, and the time and labor required of the trustee in the execution of the trust. The estate in some cases may be of little value, and yielding but a small income, but involving, at the same time, a good deal of labor in its care and supervision, and in such cases five per cent. might not be a just and reasonable compensation. On the other hand, where the income is very large, that rate might be considered as excessive. After all, it is a matter resting largely in the discretion of the Court, its reason and judgment, taking into consideration all the facts and circumstances surrounding the trust. In this case we are dealing with an income from five-eighths of a very large and valuable real and personal estate; the personal property alone exceeds two and a half millions of dollars, and the real estate is of still greater value. The annual net income collected by the trustees from the real estate has averaged $135,169.35, five-eighths of which will be collected by them as trustees so long as the trust continues, and the net income from the personal estate has averaged $122,990.40, five-eighths of which is to be collected also by them during the same period of time. So their commissions may therefore be safely calculated upon an ordinary yearly revenue of $160,724.84. The personal estate to be set apart for the daughters, the testator directs shall be invested in mortgages upon real or leasehold property, or in State or municipal bonds of the most assured standing, and the collection of the income from these sources cannot impose any great labor or trouble. The real estate consists of warehouses, city and county dwelling houses, offices, buildings, unimproved city and suburban property, and some real estate in Washington and other places. The general care and management of so large a real estate as

this must necessarily require not only time and labor, but the exercise of sound judgment, especially in the development of the unimproved city and suburban property. The auditor in the first account allowed a commission of five per cent., and at this rate the trustees' commissions annually would exceed eight thousand dollars; and this we all agree is a fair and liberal compensation for the services to be rendered hereafter by the trustees for the collection and disbursement of the income from the estate devised in trust for the daughters. We cannot agree, therefore, with the Court below, that there is any just ground for increasing the rate of commissions to six and a half per cent., thereby imposing an additional annual burthen on the *cestuis que trust* of twenty-four hundred dollars.

And as to the income collected from the trust estate after the time limited for the settlement of the personal estate, and which the law adjudges was collected by them in their capacity as trustees and not as executors, they are for the same reasons entitled to the same commissions, but inasmuch as they have been allowed two per cent. on this income in their administration account, and to which they were not entitled as executors, this amount must be deducted from the five per cent. allowed to them as trustees.

In regard to commissions on the income collected by them as executors, within the thirteen months limited by law for the settlement of the personal estate, and which they had a right to collect as executors, there is some difference of opinion. In view of the fact that their duties as executors and trustees are distinct and separate, and that they were obliged under the will to transfer the fund to themselves as trustees, and as such to disburse it among the *cestuis que trust,* they are, in the judgment of a majority of the Court, entitled to commissions for the responsibility thus incurred and the services thereby rendered. This income they had, however, collected as executors, and for which they had been allowed a commis-

Abell *vs.* Brady.

sion of two per cent. as executors; and it seems to us, there-
fore, that an additional commission of three per cent.
would be a just compensation for its disbursement, thus
making five per cent. for its collection and disbursement.

The right to appeal from the order of the Court fixing
the rate of commissions is questioned in the brief of the
appellants, but the decision in *Diffenderffer vs. Winder
et ux.*, 3 *Gill & J.*, 314, is, we think, conclusive as to the
question in the case of a *conventional trust,* like the one
now under consideration. We come then to the question
of *"repairs" and "betterments."* In the former appeal we
decided the *cestuis que trust* are properly chargeable only
with ordinary expenses and repairs, and that the cost of
new buildings and such improvements as may amount to
*betterments* must be paid out of the *corpus* of the estate.
And certain items charged in the auditor's account to the
*corpus* of the estate as *betterments*, it is contended,
ought to be charged as *repairs*, and, as such, payable out
of the *income*. It does not seem to us, however, this ob-
jection can be sustained. All buildings are subject, more
or less, to natural and unavoidable decay, " and ordinary
repairs," when used in reference to buildings mean ex-
penses reasonably incurred in keeping the property in good
condition and order. "Betterments" it may not be so
easy to define. All buildings are better by being repaired;
but betterments mean something more than mere repairs,
and may be said to mean improvements upon the build-
ing itself, or so near to it as to enhance its value. Any
addition or alteration made to the buildings, or expenses
incurred in draining or paving, may be said to be better-
ments. The items in the account, such as constructing
partitions in warehouses, whether temporary or perma-
nent for the special accommodation of tenants; boilers and
engines and furnaces for heating; elevators, gas machines,
asphalt pavements; opening and widening streets ad-
jacent to the property,—these and other like expenses can-

not be said to be expenses incurred for ordinary repairs. Whether they are to be classed as betterments or improvements, or some of them as fixtures, they are not properly chargeable to the repair account.

As to "*The Sun Building,*" the witnesses differ widely as to its fair rental value all the way from $8000 to $13,000. The entire building now rents for $11,760, of which sum the Messrs. Abell & Co. pay $6760 for the part occupied by them, and, besides, they furnish at their own expense, heat for the entire building. We agree with the Court below, that the rent now paid is a fair and reasonable rent, and that the rent paid by Messrs. Abell & Co. for the part occupied by them is about a fair proportion.

We agree, too, under all the circumstances, that $800 is a fair rent for " Woodbourne." The property in its present condition might, according to the testimony, rent for $1000 or $1200; but it must be borne in mind that Mr. Edwin F. Abell, the tenant, has expended not less than ten thousand dollars of his own money in permanent improvements, thereby largely enhancing its value, and of which the estate will reap the benefit. So, all things considered, we see no just reason for increasing the rent fixed upon by the Court.

It follows from what we have said, that in the appeal of Edwin F. Abell and George W. Abell, executors and trustees, the order must be affirmed in part and reversed in part, and the cause remanded, in order that an account may be stated, in conformity with the views of the Court. And for the same reasons, the order on the appeal of John W. S. Brady, executor and administrator, will be affirmed in part and reversed in part, and the cause remanded.

> *Order affirmed in part and reversed in part, and cause remanded; each party to pay one-half of the costs of the appeal.*

(Decided 13th March, 1894.)