The People of the State of New York, Respondent, *v.* William H. Schooley, Appellant.

*Receiving stolen goods — evidence competent on the trial of an indictment therefor — what personal knowledge of a party making an acknowledgment a notary should have.*

Upon the trial of an indictment for receiving stolen goods, knowing them to have been stolen, it appeared that certain bonds, the property of one Gay, were stolen from her possession, and that subsequently these bonds, falsified by the obliteration of certain indorsements existing thereon at the time of the larceny, and further falsified by the obliteration of the true numbers on the bonds and coupons attached and the substitution of other numbers, were in the possession of the defendant and were disposed of by him under circumstances which, it was claimed, established knowledge on his part that they had been stolen.

One of the bonds was sold by the defendant to a firm, to which he stated that the sale was for a client of his by the name of Peterson, who owned the bond. Peterson was not produced upon the trial, nor was his absence satisfactorily accounted for.

An expert in chemistry testified to the erasure of the names and numbers originally upon the bonds and the substitution of other numbers, to which evidence the defendant objected on the ground that he was not charged with the crime of forgery.

*Held,* that it was competent to show not only the theft of the bonds, which the defendant was charged with having received with knowledge of their theft, but also the condition of the bonds when they reached the receiver's hands, or which they had assumed when discovered; that the evidence being competent its exclusion was not called for because it tended to establish the commission of another crime by some one else.

Upon such trial the opinions of experts in handwriting, to the effect that the signatures to powers of attorney and receipts purporting to have been given to the defendant by Peterson were in the handwriting of the defendant, were admitted in evidence, the evidence being introduced by the prosecution upon the theory that the defendant had falsified the powers of attorney. The foundation for the testimony was properly laid, and consisted of the handwriting of the defendant upon other papers and documents concededly his. The notaries, before whom the powers of attorney were acknowledged, were subsequently called as witnesses by the defendant, and testified in effect that the defendant introduced a man to them as Peterson, whereupon the acknowledgments were taken and they severally subscribed their names as notaries public. After the notaries had testified the defendant moved to strike out the opinions of the experts, which motion was denied.

*Held,* that even if it should be assumed that the testimony of the notaries established the fact that the defendant did not sign the powers of attorney, the refusal of the court to strike out the opinions of the experts would not call for the reversal of the judgment, as the evidence was competent and proper when received, and, being in the case, the court had the right to let it stand for what it was worth, although it was disproved.

Upon the trial the officer, Vallely, to whom the warrant for the arrest of the defendant was given, was allowed to testify in regard to the absence of the defendant from the jurisdiction of the court. During his entire examination but one objection was made by the defendant, which was not sustained by the court; that objection was a general one, and was not interposed to a question which would naturally suggest to the mind of the court that the purpose of it was to show that the defendant was trying to avoid trial. Subsequently the court inquired of the district attorney whether the purpose of the examination was to show flight, to which the prosecuting officer replied, "Certainly," whereupon the examination of the witness was continued without objection. Later on some controversy arose over the introduction in evidence of the record of a forfeited bail bond, and the court, of its own motion, refused to receive it, and, in order to rid the case of any such question, said : "I will strike out the entire testimony of Officer Vallely, and I will tell the jury to disregard it." The defendant did not object to this determination of the court.

*Held,* that under such circumstances the defendant was not entitled to a reversal of the judgment.

The impropriety of a notary giving a certificate that a person making an acknowledgment before him of the execution of a written instrument was personally known to him, when he had no other acquaintance with him than that obtained by a mere introduction, considered by VAN BRUNT, P. J.

APPEAL by the defendant, William H. Schooley, from a judgment of the Court of General Sessions of the Peace in and for the city and county of New York, rendered on the 27th day of January, 1895, upon the verdict of a jury convicting him of the crime of receiving stolen goods knowing them to have been stolen.

*Robert J. Haire*, for the appellant.

*John R. Fellows, District Attorney*, for the respondent.

PARKER, J.:

In December, 1890, four bonds of the St. Louis and Iron Mountain Railroad Company, of the par value of $1,000 each, the property of Ellen M. Gay, were stolen from her possession in Washington, D. C.

In August of the following year these bonds, falsified by the obliteration of certain indorsements thereon at the time of the larceny, and further falsified by the obliteration of the true numbers on the bonds and coupons attached, and the substitution of other numbers, were in the possession of the defendant, and disposed of by him under circumstances which the People claimed, and the jury have found, established knowledge on his part that they had been stolen.

One of the bonds the defendant sold to the firm of James Walsh & Son about August 10, 1891, for which he received the check of the firm for $1,035. One of the firm went with him to the bank upon which the check was drawn, where it was cashed, after which they returned to the office of Walsh & Son, and defendant handed back to the firm $135, taking with him $900, which he said was for a client of his by the name of Peterson, who owned the bond.

Peterson was not produced upon the trial, nor was his absence satisfactorily accounted for.

The history of the disposition of the other bonds to White, Morris & Co., the drawing out of the money (after deposit by defendant personally) upon his check, which he said was done for the purpose of turning the money over to his client Peterson, together with numerous other facts and circumstances, were shown, from which it was claimed, on behalf of the People, that an inference

of fact should be drawn that the defendant had guilty knowledge that the party from whom he received the bonds had stolen them. The defendant sought to show that his possession of the bonds was innocent; that they had been placed in his hands for disposition by a client named Joel Peterson, whom it appears was known as Edgar Richardson, and also as Abijah Richardson; and that at the time they came into his possession for disposition he had no knowledge or reason to suppose that Peterson had not come honestly by them. It is a fact of no small significance that these bonds, which had at the time an established market value at which they could be readily disposed of, should have been placed in the hands of this defendant for sale at a price far below that of their value in the open market. It is not our purpose to discuss the evidence, for it is not contended that the trial court was in error in deciding that the evidence presented a question for the jury. Nor is this such a case as justifies the court in interfering with the verdict of the jury, which is the ultimate tribunal for the adjudication and determination of questions of fact, for that may not be done where the facts are reasonably capable of diverse or opposing inferences, unless the court is satisfied, from a review of the testimony, that injustice has probably been done. (*People* v. *Cignarale*, 110 N. Y. 23.)

The result of our examination of the record does not lead to any such conclusion.

The appellant urges that error was committed by the trial court in permitting Robert Ogden Doremus, an expert in chemistry, to testify to the erasure of the names and numbers originally upon the bonds, and the substitution of other numbers, because the defendant was not charged with the crime of forgery. It was clearly competent to show, not only the theft of the bonds which the defendant was charged with having received with knowledge of the theft, but also the condition of the bonds when they reached the receiver's hands or which they had assumed when discovered. And the evidence being competent its exclusion was not called for, because it tended to establish the commission of another crime by some one else. Nor do we think the court erred in admitting the opinions of experts in handwriting to the effect that the signatures to the powers of attorney and receipts, purporting to have been given to the defendant by Peterson, were in the handwriting of the defendant.

This testimony was introduced by the prosecution upon the theory that the defendant had falsified the powers of attorney.

The foundation for the testimony was properly laid, and consisted of the handwriting of the defendant upon other papers and documents concededly his. The powers of attorney purported to have been acknowledged before notaries public, who were subsequently produced by the defendant, and testified in effect that the defendant introduced a man to them as Peterson, whereupon the acknowledgments were taken, and they severally subscribed their names as notaries public. After the notaries had testified, the defendant moved to strike out the opinions of the experts, which motion the court denied. The appellant contends that this motion should have been granted, because, as he alleges, it then positively appeared that some person other than the defendant executed the powers of attorney. If it should be assumed that the testimony of the notaries established that the defendant did not sign the powers of attorney, the refusal of the court to strike out the opinions of the experts would not call for a reversal of the judgment, for it was competent and proper evidence when received, and, being in the case, the court had the right to let it stand for what it was worth, although disproved. But it is not accurate to say that the testimony of the experts was wholly disproved by that of the notaries. One of the notaries, Mr. Frank Moss, testified that this defendant came to him with another man, whom he introduced as Joel Peterson, and requested him to witness the signature and take Peterson's acknowledgment; that he had never seen the man called Peterson before, but did know the defendant, and that, on the faith of the introduction, he witnessed the signature and took the acknowledgment. His testimony, so far as it related to the signing of the paper, which he witnessed and acknowledged, was as follows : " Q. It is your best recollection that that paper was not signed in your presence? A. I think it was not ; I think I asked this man if he desired me to witness his signature, which I understand to be the proper form, and I did so at the time. By the court : Q. You witnessed the signature, but you had not seen it signed? A. No, I wouldn't say that I had. By a juror : Q. Mr. Moss, do you say that you seen this man Peterson sign that? A. No ; I didn't say that ; I am not sure of that."

It is clear that Moss' testimony did not establish either that the alleged Peterson signed the power of attorney which he acknowledged, or that defendant did not. Nor was there any other testimony on that subject, except that of the defendant. And the jury were, therefore, at liberty to consider the testimony of the experts for what it was worth.

The other notary, Mr. Ritter, testified that the man, whom defendant introduced to him as Peterson, did sign a power of attorney in his presence, but as the motion made related to the execution of both papers and it was proper to refuse it as to one, the exception is not available.

The appellant also alleges that the trial court erred in permitting James F. Vallely, the officer to whom the warrant was given for the arrest of the defendant, to testify in regard to the absence of the defendant from the jurisdiction of the court. It is true that he gave some testimony tending in that direction, but during his entire examination only one objection was made by the defendant, which was not sustained by the court. That objection was a general one, and was not interposed to a question which would naturally suggest to the mind of the court that the purpose of it was to show that the defendant was trying to avoid trial. That the question to which the objection was interposed was not so understood by either the court or the counsel for the defendant appears later on in the examination of the same witness, when the court inquired of the district attorney what his purpose was in the examination he was then making of the officer, and whether it was to show flight? To which the prosecuting officer replied, "Certainly," whereupon the examination of the witness was continued without objection. Later on some controversy arose over the introduction in evidence of the record of the forfeited bail bond, and the court, of its own motion, refused to receive it, and, in order to rid the case of any such question, said : "I will strike out the entire testimony of Officer Vallely, and I will tell the jury to disregard it." The defendant did not object or except to this determination of the court, and wisely, because by it there was stricken from the record the testimony which he now claims was prejudicial to him, but which was admitted, as we have already observed, under such circumstances as would not entitle the defendant to a reversal of the judg-

ment had the evidence been improper. Under still another point, we are informed that the entire charge was excepted to, and the record verifies the statement. Such an exception, however, no more advantages the defendant than if he had not taken the exception. Even were the rule otherwise, the defendant would not be entitled to a reversal of the judgment, for the charge of the learned trial court correctly laid down the law of the case, and properly presented to the jury the questions of fact upon which they were to pass.

The judgment should be affirmed.

O'BRIEN, J., concurred.

VAN BRUNT, P. J.:

I concur in the conclusion arrived at by Mr. Justice PARKER, but it does not seem to me that the flagrant violation of duty by the notaries who took the acknowledgments to the powers of attorney offered in evidence in this case should pass without notice. In fact, they should be proceeded against criminally.

Two powers of attorney were offered in evidence claiming to have been executed on the fourteenth and the twentieth of August respectively, in which each notary certified that the person purporting to execute the power of attorney was personally known to such notary; and the evidence, as given by the notaries, shows that they had never seen such person prior to the time of the alleged acknowledgment, and that the only evidence of identity was an introduction by the prisoner, who, to at least one of the notaries, was not even personally known. It would appear from the record that it had been the habit of at least one of these notaries to certify to personal knowledge of the identity of a person executing a paper from an introduction at the time of execution. Such practice is a clear violation of the provisions of the statute and renders the notary liable to prosecution.

By 1 Revised Statutes, 758 (§ 9), it is provided that no acknowledgment of any conveyance having been executed shall be taken by any officer, unless the officer taking the same shall know or have satisfactory evidence that the person making such acknowledgment is the individual described in and who executed such conveyance.

It is evident that the satisfactory evidence referred to in this sec-

tion means legal evidence, namely, the testimony of witnesses sworn to the fact.

Section 15 prescribes that every officer who shall take the acknowledgment or proof of any conveyance shall indorse a certificate thereof, signed by himself on the conveyance, and in such certificate shall set forth the matters hereinbefore required to be done known or *proved*, on such acknowledgment or proof, together with the names of the witnesses examined before such officer, and their places of residence and the substance of the evidence by them given.

Thus it appears that the certificate which the officer taking the acknowledgment must give must not only state the fact of the acknowledgment, but, if the person was not personally known, that he took evidence in regard to his identity, and he must state the names of the witnesses and the substance of the evidence given and certify that that was satisfactory proof to him.

But it may be said that there is no requirement that witnesses shall be examined in order to prove identity ; that all that the statute requires is that the officer shall have satisfactory evidence, and that that may not mean sworn evidence. It may be entirely safe to rest the decision of this question upon the statute itself. In a statute evidence means legal evidence, and there is no proof by parol which is legal evidence unless sworn to by witnesses.

If there were any doubt upon this proposition it would be sufficient to refer to the decisions under section 12 of the same statute, which section provides that the proof of the execution of any conveyance shall be made by a subscribing witness thereto, who shall state his own place of residence, and that he knew the person described in and who executed such conveyance; and such proof shall not be taken unless the officer is personally acquainted with such subscribing witness, or has satisfactory evidence that he is the same person who was a subscribing witness to such instrument.

In the case of *Tuttle* v. *The People* (36 N. Y. 435) it is expressly held that the statute requires an oath of the truth of the facts essential to satisfy the officer taking the proof, and to justify a record of an instrument. The case cited was one where a party swore that he was present at the execution of the paper, when such was not in fact the case, and upon indictment he was convicted of perjury.

In the case of *Miller* v. *Link* (2 Sup. Ct. Rep. [T. & C.] 86) the same rule is laid down. It is said the acknowledgment of a deed must show that the party acknowledging the instrument was known or proved to the officer to be the party named in and who had executed the same.

The rule in regard to a subscribing witness is also recognized in the case of *Jackson* v. *Vickory* (1 Wend. 412). And in the case of *Dibble* v. *Rogers* (13 Wend. 542) the necessity of incorporating in the certificate of the officer the evidence taken by him, where the identity of the person executing the instrument is proven, is also expressly recognized. Many other cases might be cited establishing the proposition that mere personal introduction at the time of the execution of an instrument is not the evidence which the statute requires, and that it is a violation of duty upon the part of an officer, making him liable to punishment, to take an acknowledgment under such circumstances. He must have evidence of identity, and incorporate such evidence in his certificate, if he desires to escape punishment for the violation of his duty.

Judgment affirmed.