## CIRCUIT COURT OF BALTIMORE CITY

Filed July 15, 1901.

PHILOMENA M. ABELL
VS.
EDWIN F. ABELL, TRUSTEE.

*Charles J. Bonaparte* for plaintiff.
*Richard M. Venable* for defendant.

RITCHIE, J.—

Under the will of the late Walter R. Abell, real estate amounting in value to $381,000 was devised to his two brothers in trust, among other things, to hold and manage one-third thereof, and after paying certain charges, including repairs to the property, to pay over the clear income of said one-third to his wife for the term of her life.

The remaining two-thirds were devised in trust for the benefit of the testator's children.

The trustees and the survivor were also empowered from time to time to sell any portion of the real estate so devised and invest the proceeds in the manner directed, with power to change investments. The will makes no provision for compensating the trustees for their services.

The trust thus created is not being administered under the jurisdiction of this court, but Edwin F. Abell, the surviving trustee, has recently rendered to Philomena M. Abell, the widow of the said Walter R. Abell his statement of account, and the parties have submitted to the court a special case stated, in which the said widow is made plaintiff and the said trustee is made defendant, and they pray that a declaratory decree may be passed determining (1) What commission, if any, the said trustee will be entitled to charge on any sales made by him of said real estate; (2) What, if any, on the investment of the proceeds of any such sale, and (3) Whether the improvements set out in said account are properly classified and charged against the income as repairs, or whether they should be charged against the corpus.

Ever since the case of Ringgold vs. Ringgold, 1 H. & G. 27-83, it has been recognized as law in Maryland that a conventional trustee is entitled to compensation for his services, although no provision therefor is made in the instrument creating the trust, unless, as was the case in Railroad vs. Keighler, 29 Md. 572, the trust is of such a nature as that its performance imposes no labor or trouble, or it appears from the nature of the trust, or the terms of the instrument creating it, that no allowance of commissions was intended.

The English rule which denied compensation to persons holding fiduciary relations, unless the instrument creating the trust provided for it, but made allowances by way of indemnity on the basis of a per diem, was probably never accepted in Maryland, and to both the Chancellor and the Court of Appeals in Ringgold vs. Ringgold the allowance of compensation by way of commissions was regarded as more satisfactory than the English rule.

In the absence of any statute on the subject the court in the case just men-

tioned, rested the right of the conventional trustee to commissions on an equitable construction of, or the analogy to, the statutes which allowed commissions to executors, administrators, guardians and trustees under judicial sales. Among the numerous cases following and applying the doctrine of Ringgold vs. Ringgold, see Gibson's case, 1 Bland 144; Whyte vs. Dimmock, 55 Md. 452; Abell vs. Brady, 79 Md. 98, and Miller's Equity, 656.

These trusts of course are different in character. Sometimes the deed or will simply provides for sale and distribution; sometimes the trust is a continuing one, without any power of sale, or occasion for selling any of the corpus, or necessity for making investments; and sometimes the trust is a continuing one, with the power under the deed or will to sell and invest proceeds. This case is a continuing trust with power of sale and investment.

In the case of a mere continuing trust there can be no controversy; the practice of allowing a commission on the annual income is thoroughly established. In prescribing the rate of this commission the court will consider the circumstances of each case, the nature and character of the trust estate, the responsibility imposed, and the time, labor and skill required of the trustee, but the rate usually allowed is five per cent. on the income. Abell vs. Brady, 79 Md. 99, Miller's Equity, 657.

The trustee in this case has charged five per cent. on the income, and to this there is no objection, but the plaintiff contends that a commission on the income is all that the trustee is entitled to charge; that although under the powers conferred he may be called on from time to time to render special services in selling parts of the trust estate and investing the proceeds, he will not be entitled to any commissions, or further compensation, on any such sales or investments.

This contention is contrary to the long established practice of the equity courts of Baltimore City, in accordance with which the trustee in such a case as this is also entitled to commissions on any original sales he may make, and also on the original investment of the proceeds of such sales.

The commission on income is the compensation for the general care and supervision of the trust estate, that is,

for the usual and ordinary services of the trustee. As said by Judge Dennis, in his opinion in the Hiss estate (see Miller, 662), "the five per cent. commissions allowed the trustee were for the general management and settlement of the estate, and do not include the allowance for such special services" as investments.

Many cases on the dockets of this court and of Circuit Court No. 2 might be cited to show the practice as above stated, and the Court of Appeals has distinctly recognized the fact that commissions on the income do not include compensation for special services.

Under the deed in Ringgold vs. Ringgold the trustee was directed to sell the estate, pay off creditors, invest the balance of the proceeds, and then hold on a continuing trust. While the general claim for commissions was sustained, the case does not show what commissions were allowed, but the right of the trustee to commissions on sales was distinctly recognized (p. 84).

In Whyte vs. Dimmock, 55 Md. 452, and Jenkins vs. Whyte, 62 Md. 427, (same trust) the trustees were allowed five per cent. on the income and five on investments, and in Denmead vs. Denmead, 62 Md. 321, the allowance of seven-and-a-half per cent. on income and two-and-a-half on investments was expressly sanctioned.

Judge Dennis, in the Hiss estate, *supra*, says that it is the uniform practice of this court to allow a trustee two and a half per cent. on investments in addition to the commission on income.

The trustee being entitled to a further commission for special services in making investments, he is, at least equally, entitled to an additional commission for the special service of making sales.

As this trustee will thus be entitled to commissions on such original sales of the trust estate as he may make, and on the original investments of the proceeds thereof, the rate is fixed in the one case by the 24th Equity Rule, and in the other by the established practice.

It is true, as urged by the plaintiff, that this trust is not being administered in this court, and that such sales and investments as may be made by the trustee will or may be made under his powers under the will, and not un-

der the decree or order of court, but the services rendered will be the same; and when the question of his compensation is brought here for adjudication, I have no standard by which to measure it, except that furnished by the rules and practice of the court for like services. In Ringgold vs. Ringgold the trust had not been administered in court.

The solicitor for the trustee concedes in his argument that, under Jenkins vs. Whyte, 62 Md. 437, the trustee will be entitled to commissions on only such original sales and original investments as he may make, that is to say, when the trustee once sells any portion or portions of the corpus and invests the proceeds, he will not be entitled to another commission should he sell the investment, or on any re-investment of the proceeds of the first.

In the account referred to there is a charge of $445 for commissions on the sale of certain State of Maryland bonds. These bonds were purchased chiefly with the proceeds from the sale of a portion of the real estate, on which sale the trustee received commissions in another proceeding, and his solicitor states that this charge was made by mistake and the claim is waived. The charge of $126.25 commissions on the investment in five bonds of the sum of $5,050, which money was part of the proceeds of the sale of the real estate just referred to, is proper.

In the account of the trustee the cost of certain improvements amounting to about $1,800 is charged against the income on the theory that they were repairs, but the plaintiff contends that a part of them should be charged upon the corpus.

The general rule that repairs are to be made by, or charged upon the income of, the life tenant, and substantial improvements or betterments, charged to the corpus, is well understood, but there is difficulty sometimes in drawing the line between them. It is however not necessary in this case to define or distinguish betterments. The trustee has full power under the will to make temporary or permanent improvements, but he has no power under the will or under the general rule of law to charge upon the income any improvements except such as constitute repairs, and in Abell vs. Brady,

79 Md. 101, the court distinguishes between repairs on the one hand, and betterments and fixtures on the other. So that the question is, are these improvements properly classed as *repairs?*

It is said in Abell vs. Brady, 79 Md. 101, that ordinary repairs, when used in reference to buildings, mean "expenses reasonably incurred in keeping the property in good condition and order." But the duty of the life tenant whether legal or equitable to keep the property in good condition and order, requires him to use proper care to keep it from going to decay. Wilson vs. Edmonds, 24 N. H. 545, 4 Kent, sec. 76. It is his duty not only to mend and preserve and keep up, but also to restore the appointments or furnishings of the property after decay or dilapidation and to renew things that have worn out. For instance, if a boiler has worn out, or the plumbing has become dilapidated, or the roof has decayed, the restoration of them is repair, and the cost falls on the life tenant.

Little vs. Little, 161 Mass. 188-195-7.

Stephens vs. Milnor, 24 N. J. Eq. 373.

Beach vs. Crain, 2 N. Y. 93.

Railroad vs. Grant, 9 Blatchf. 543-545.

Caldecott vs. Brown, 2 Hare 144.

Ex. p. Jones, 103 N. Y. 621.

But the life tenant is required to keep up the property only according to its furnishings, plan or character at the time he gets it, that is for example, if antiquated plumbing wears out, the life tenant can be charged only with the cost of renewing it with plumbing of the same kind, and the trustee cannot replace it with a modern system and charge the income with the whole expense.

Nor, if the property lacks certain conveniences or arrangements, such as furnaces for heating, elevators or gas fixtures, can the trustee *introduce* them and charge them as repairs against the income. Beyond the expense of keeping in repair, the value of the inheritance is not to be enhanced out of the income.

Little vs. Little, supra.

Railroad vs. Grant, supra.

In re, Fulton Street, 29 How. Pr. 430.

Dwight vs. Ludlow Co., 128 Mass. 280.

Abell vs. Brady, 79 Md. 101.

If in renovating property the trustee substitutes for what was worn out something modern, different in character and more expensive, the expense should be apportioned, and the income charged only with such amount as a new thing of the same character as the old one would have cost.

Little vs. Little, supra.

Railroad vs. Grant, supra.

Barger's App., 100 Pa. 23.

Applying these rules to the improvements in question as well as I can from the somewhat meagre statement of facts, I find that the charge of $50 for closets and new plumbing, $399.85 for repairs to skylight and bay window extension, $176.86 for remodeling plumbing, new closets, etc., and $363.86 for renewing plumbing, new closets, gas fixtures, etc., are charges that ought to be apportioned between the income and the corpus. Many things included in them are not restorations but things introduced for the first time; others are substitutions of a different and more expensive character.

The cost should be apportioned as I have indicated, that is the cost of things newly introduced, and the excess cost of substitutions, should be charged against the corpus, and the rest against income.

There is nothing to show whether the furnace furnished for $55 was in renewal of an old one or not; the sliding doors at $17.50 were entirely new and not in renewal, and these expenses should be charged to the corpus.

The new worm gear and waiter for the elevator at $295 seem to have been in renewal of the old ones; the carpentering, repairing windows, doors, shutters, floors, etc., at $337.22, seem to have been ordinary repairs; the new furnace at $61.75, and another at $95, seem to have been in renewal of old ones of the same sort, and these expenses should be charged to the income.

In charging two furnaces and gas fixtures so far as in renewal to income, I have not overlooked the fact that articles of like character in Abell vs. Brady were charged against the corpus. But I have carefully examined the record in that case, including the list of like articles charged to the corpus, (which are set out in full in the opinion of the lower court, Record, p. 97), and I find that, with possibly one exception, in regard to which the point that it might have been to some extent in renewal was not made, *all of them were articles newly introduced into the property, and not supplied in renewal or restoration of old ones.* See testimony, Record, 26-33.

Abell vs. Brady, therefore, simply decides in line with other cases that articles of the kind referred to *when newly introduced* cannot be charged as repairs against the income. They are not renewals or restorations, and I have of course followed that case in charging all such to the corpus; but there is nothing in Abell vs. Brady in conflict with the authorities which hold that such articles, when furnished in renewal or restoration of old ones worn out, are chargeable against the income.

I will sign a decree in accordance with the views expressed.