526 A.2d 59

Yvonne A. BALDERSTON

v.

William S. BALDERSTON.

No. 1056, Sept. Term, 1986.

Court of Special Appeals of Maryland.

June 4, 1987.

Debra Sheeskin-Hershey and Charles S. Lazar (Sheeskin, Hillman & Lazar, P.C., on the brief), Rockville, for appellant.

William S. Balderston, Washington, D.C., for appellee.

Argued before WILNER, GARRITY and ALPERT, JJ.

GARRITY, Judge.

On the parties' fourth trip before this court, we are asked to determine whether the Chancellor erred in limiting reimbursement for capital improvements made by Mrs. Balderston to the former marital home to $359.86, in denying Mrs. Balderston's request for attorney's fees, and in failing to determine whether Mrs. Balderston was entitled to prejudgment interest on the judgment for mortgage payment arrearages. Mr. Balderston cross-appeals that the Chancellor erred in honoring the District of Columbia URESA order.

### Facts

Mr. and Mrs. Balderston were divorced in 1975 by the Circuit Court for Montgomery County. The divorce was pursuant to a separation and property settlement agreement incorporated into the divorce decree.[1] The agreement reads in pertinent part:

(4) That he agrees to give possession of the home of the parties presently held as tenants by the entirety, and known as 11 Hilltop Road, Silver Spring, Maryland, to the Wife, with right of privacy and control of the premises, until the youngest child reaches the age of eighteen (18) years or in the event of a divorce between the parties, until the Wife shall remarry whichever event first occurs. Upon the happening of either of them or at any time prior to the happening of either event, upon the request of the Wife, the Husband agrees to join with the Wife in listing

---

1. We note that, although Mr. Balderston now appears before this court *pro se*, both parties were represented by counsel when the separation agreement at issue was entered into by them.

the property for sale at the best price obtainable, to execute, acknowledge and deliver all papers required in the sale of same, and, after reimbursement to the Wife, the costs of any capital improvements made to the property by the Wife after the date of this Agreement, to divide the net proceeds realized from the sale equally between the parties.

(5) That he agrees to pay, and maintain on a current basis, the monthly mortgage payments including 1/12 of annual taxes and fire insurance premiums as now charged or may hereafter be charged, as required by the lender; the mortgage referred to above is identified as that instrument recorded in the Land Records of Montgomery County, Maryland, as a lien of encumbrance against the home of the parties known as 11 Hilltop Road, Silver Spring, Maryland. In addition, the Husband agrees to pay and maintain on a current basis, the existing mortgage insurance policy covering the said lien or encumbrance against the said home of the parties.

\* \* \* \* \* \*

(2) That the Wife promises and agrees to join with the Husband in listing for sale at the best price obtainable, at such time as the youngest child of the parties reaches the age of eighteen (18) years or in the event of a divorce between the parties, at such time as she should remarry, whichever event first occurs, to execute, acknowledge and deliver all papers required in the sale of same, and, after reimbursement to her of the cost of any capital improvements she made to the property after the date of this Agreement, to divide the net proceeds realized from the sale equally between the parties.

On April 24, 1985, Mrs. Balderston filed a Petition for Contempt with the Circuit Court for Montgomery County requesting that she be granted a judgment for mortgage payment arrearages and for expenditures for capital improvements. The parties subsequently appeared before Domestic Relations Master James L. Ryan. At the hearing before the Master Mrs. Balderston introduced cancelled

checks for mortgage payments she had made since June, 1976 which amounted to $34,388.47. She also introduced receipts for work performed on the house totaling $22,-097.57.[2]

Although Mr. Balderston proferred evidence concerning child support payments pursuant to a District of Columbia Superior Court URESA order and argued that the excess of the amount paid under the District of Columbia order over that payable under the Montgomery County child support order should be applied to his mortgage payment arrearages, the Master excluded this evidence.

The Master awarded Mrs. Balderston $34,388.47 in mortgage arrearages, $22,097.50 reimbursement for capital improvements made to the Silver Spring property by Mrs. Balderston, and $700 for attorney's fees.

Mr. Balderston took exception to the Master's Report contending that he was not liable to his former wife for $22,097.57 because the work performed was for ordinary repairs and not capital improvements; he also took exception to the Master's award of attorney's fees contending that there was no showing of need made by his former wife.[3]

Pursuant to Mr. Balderston's filing of exceptions, the parties appeared before the Honorable Stanley Frosh in the Circuit Court for Montgomery County. Chancellor Frosh found that, "the only true capital improvements [Mrs. Balderston] made were the addition of a dishwasher and new lighting fixtures where none had previously existed." The Chancellor awarded Mrs. Balderston $359.86 reimbursement for these two expenditures. The Chancellor also granted Mrs. Balderston a judgment in the amount of $34,388.47 for

---

**2.** The Balderston family home was purchased in 1970 for $25,400. ° Its appraised market value in 1985 was $106,400.

**3.** Mr. Balderston also raised the District of Columbia URESA order in his exceptions contending again that the District of Columbia "overpayment" should be applied to reduce the amount of money he owed his former wife in mortgage arrearages.

mortgage arrearages. Mrs. Balderston's request for attorney's fees was, however, denied without explanation. Additionally, Mrs. Balderston's request for prejudgment interest on the mortgage payment she had made in behalf of Mr. Balderston was not part of the lower court's order.

## I. *Capital Improvements*

The separation agreement contemplated that upon sale of the premises Mr. Balderston would reimburse Mrs. Balderston for any expenditures she made for capital improvements to the property. The agreement provided, in pertinent part:

> Upon the happening of either of them [the youngest child reaches eighteen or the Wife remarries] or at any time prior to the happening of either event, upon the request of the Wife, the Husband agrees to join with the Wife in listing the property for sale at the best price obtainable, to execute, acknowledge and deliver all papers required in the sale of same, and, *after reimbursement to the Wife, the costs of any capital improvements made to the property by the Wife* after the date of this Agreement, to divide the net proceeds realized from the sale equally between the parties. (emphasis added).

Mrs. Balderston sought to recover funds she had spent on such items as kitchen remodeling, rebuilding the hot water heating system, repaneling the foyer, plumbing work performed in the bathroom, rebuilding a gate, installation of electrical wiring, refinishing walls in the master bedroom, installation of a new roof, electrical work performed in the attic, replacement of water pipes, sanding and staining wood floors, a new basement door, several window air conditioners, new lighting fixtures, and the installation and servicing of a new dishwasher for the kitchen.

Mrs. Balderston described each project she had undertaken and offered justification for the expenditures. As an example, in explaining why the kitchen had been remodeled, she stated:

[B]ecause the ceiling had fallen through the kitchen because we had a bad leak in the bathroom. The floor had entirely come up in the kitchen because of there being a leakage under the kitchen sink, and we only had metal cabinets at the time which were all rusted out which had to be replaced, and the kitchen was pretty much falling apart.

Mrs. Balderston further related that the furnace and hot water heating system had to be "totally rebuilt," that the "bathroom plumbing had to be replaced because the sink was broken," that a new roof was installed because the old one leaked, that new water pipes were installed because the old pipes were cracked, and that the foyer had to be repaneled because "all the cracks that were in there were very bad."

In reaching his decision as to whether the work performed by Mrs. Balderston on the property was "repair" or a "capital improvement," the Master utilized the following definition of "improvement":

> [A] valuable addition made to property, *amounting to more than mere repairs or replacement, and intended to enhance its value.* An expenditure to extend the useful life of an asset. Such expenditures are capitalized as part of the asset's costs. (emphasis added).

Black's Law Dictionary 682 (5th ed. 1979).

The Master concluded that the "improvements made by Mrs. Balderston fit within this definition," and recommended that a judgment in the amount of $22,097.57 for capital improvement reimbursement be awarded to Mrs. Balderston. The Chancellor had a different view. He regarded the distinction between recoverable improvements and non-recoverable repairs thusly:

> Maryland courts have not clearly articulated the distinction between capital improvements and repairs. A generalized view of the case law indicates that a capital improvement is a permanent addition or betterment which is more extensive than an ordinary repair and substantial-

ly enhances the value of real property. 42 C.J.S. Improvements § 1. The Internal Revenue regulations provide that amounts paid or incurred for incidental repairs and maintenance of property are not capital expenditures. Internal Revenue reg. § .263(a)–1 (1986).

Apparently applying that standard, he concluded:

The fact that the kitchen was remodeled because of age, leakage, rust, and general disrepair is an indication that the work can only be characterized as repair/replacement. The same is true of the furnace and hot water system, of which Mrs. Balderston said, "I had problems with the furnace which had to be totally rebuilt. I had to have a new water heater installed because the other one was broken...."

As for the paneling of the foyer, Mrs. Balderston said, "I had the halls stripped. I had colonial paneling put in. All the cracks that were in there were very bad. It had to be totally redone...." Again Plaintiff's own testimony shows that the work was in the nature of repair.

Regarding bathroom plumbing, Plaintiff said, "[T]he bathroom plumbing had to be replaced. The sink was broken. We had to have a new vanity put in the sink. A lot of regrouting had to be redone...." From the testimony, there is every indication that the work was repair or replacement.

The rebuilding of a broken gate cannot be characterized as a capital improvement, nor can removal of non-code electrical service. Installation of window air conditioners is not a permanent addition to real property and is not a capital improvement. The work done to the master bedroom was repair, as indicated by Plaintiff's testimony concerning leakage and general deterioration.

Installation of a new roof to resolve leakage problems is a repair. Similarly, replacement of non-working lighting fixtures is not a capital improvement. Replacement of cracked water pipes and the sanding of wood floors are both in the nature of repair work. Installation of a

smoke detector is not so substantial as to qualify as a capital improvement.

The only true capital improvements Plaintiff made were the addition of a dishwasher and new lighting fixtures where none had previously existed. Plaintiff is entitled to $359.86 reimbursement for these two expenditures.

■ We think that the Chancellor's analysis was too simplistic. Since 1891, the Court of Appeals has recognized the distinction between one's entitlement to reimbursement for "mere repairs" and for more "permanent improvements." *See Duckett v. Duckett*, 21 A. 323 (1891) (A son, consensually possessing his father's land and making repairs and improvements thereto prior to the father ousting him from the land, was entitled to compensation for money and labor expanded for permanent improvements). The Court of Appeals has continued to recognize this distinction. If work performed, or "betterment" as it is sometimes called, has "enhanced the value" of the property, then that betterment is categorized as a reimbursable improvement; work not meeting this standard is labelled, however, non-reimbursable repair. *See Abell v. Brady*, 79 Md. 94, 28 A. 817 (1894).[4]

The case of *Masters v. Masters*, 200 Md. 318, 89 A.2d 576 (1952), is particularly instructive to the issue presented in the case *sub judice*. In *Masters*, the married son purportedly purchased a home in 1942 for $4,300 as a home for his parents. The home was "quite filthy" at the time of purchase. *Id.* at 326, 89 A.2d 576. The parents were to live in the home rent free and were to keep it in "some kind of repair." *Id.* at 322, 89 A.2d 576. The repairs made by the parents were to "be the rent." *Id.* After moving in, the parents "paper[ed] and paint[ed] the entire house, [install-

---

4. Mr. Balderston improperly relies on the *Abell* case. His analysis failed to consider that the Court also said that "[a]ny addition or alteration made to the building, or expenses incurred in draining or paving, may be said to be betterments ... *and cannot be said to be expenses incurred for ordinary repairs.*" *Abell*, 79 Md. at 101, 28 A. 817 (emphasis added).

ed] doors, mop boards, and new shutters, [completed] the [unfinished] staircase, [cemented] the cellar, [installed] stationary wash tubs ... [and] new electrical outlets, lights on the porch and door bells, ... [and] two hardwood floors, and [refinished] another floor...." *Id.* at 326, 89 A.2d 576. The son who had purchased the home as a place for his parents to live, died soon thereafter. His parents then sought to have the property declared to be subject to a trust in their favor "to permit them and the survivor of them to use, occupy and enjoy the same." *Id.* at 321, 89 A.2d 576. Although, on appeal, no trust was found to have been established, the Court held that the parents' justified expectation of indefinite occupation was sufficient to entitle them to compensation for any improvements they had made to the property. The Court remanded the case for "determination of the amount of a lien to which the [parents were] entitled for moneys expended in improving and enhancing the value of the property." *Id.* at 337, 89 A.2d 576. In doing so, the Court cautioned that "attention should be given, not unduly to differences between improvements and repairs for accounting purposes, but primarily to *enhancement of value*...." *Id.* (emphasis added).

We shall remand so that the court can look more closely at the various expenditures claimed by Mrs. Balderston. In judging whether to give credit for them, the court must consider their primary purpose. The mere fact that the work done or items purchased serve to increase the value or attractiveness of the property is not determinative, for routine maintenance can do that. While there are few hard and fast rules, and the standards applied in other settings (such as for tax purposes) need not be applied *carte blanche* in this context, we think that, in general, the court may consider:

(1) as repairs or normal maintenance, expenditures made primarily to correct or ameliorate the effects of normal physical deterioration resulting from use, exposure to the elements, or the passage of time, i.e., to keep property in good condition during its probable useful life or to replace

or substantially restore appliances or fixtures having a limited useful life that has essentially expired; and

(2) as capital improvements, expenditures made primarily for significant additions or substantial changes to the property.

We anticipate that this type of issue may often have to be decided on a case-by-case basis, and that because of the vagaries that exist in attempting to distinguish between repairs and capital improvements, broad discretion must be vested in the trial judges to draw the lines based on the particular facts presented to them.[5]

## II. *Attorney's Fees*

Mrs. Balderston next contends that the Chancellor erred in denying her request for attorney's fees.

Counsel fees are "ordinarily awarded in a divorce case according to the ordinary factors of labor, skill, time and benefit, as well as the financial resources of the party charged." *Wallace v. Wallace*, 46 Md.App. 213, 416 A.2d 1317 (1980). *See also Quinn v. Quinn*, 11 Md.App. 638, 276 A.2d 425 (1971).

> The amount of the award of counsel fees is generally within the discretion of the trial court, and the award should not be disturbed unless the trier of fact has exercised his discretion arbitrarily or his judgment was clearly wrong.

*Wallace*, 46 Md.App. at 229, 416 A.2d 1317. *See also Danziger v. Danziger*, 208 Md. 469, 118 A.2d 653 (1955); *Sody v. Sody*, 32 Md.App. 644, 363 A.2d 568 (1976).

---

5. We can foresee, for example, an expenditure made for several discrete items, some of which might fall within the category of repairs and others within the category of capital improvements. There may also be expenditures to replace an appliance or fixture, but the replacement is substantially different or is of far greater quality than the item replaced. The court must necessarily have discretion in deciding how to treat these kinds of expenditures, including an apportionment of the expenditure between the two categories.

■ On the basis of the record before us, we are unable to conclude either that the Chancellor exercised his discretion arbitrarily or his judgment was clearly wrong in denying Mrs. Balderston's request for counsel fees.

### III. *Prejudgment Interest*

■ Although the Chancellor adopted the recommendation of the Master that a judgment be awarded in favor of the mortgage payment arrearages in the amount of $34,-388.47, an award of prejudgment interest was not included. Indeed, that issue was neither raised before the Master nor was it passed upon by the Chancellor.

The allowance or refusal of interest in equity generally is left to the sound discretion of the Chancellor. *Gravenstine v. Gravenstine*, 58 Md.App. 158, 472 A.2d 1001 (1984). As the matter was not passed upon by the Chancellor, however, we are unable to review whether prejudgment interest should have been granted. Md. Rule 1085.

### IV. *Cross-Appeal*

Mr. Balderston contends that the Chancellor erred in honoring the District of Columbia Uniform Reciprocal Enforcement of Support Act (URESA) order. He urges that the amount of overpayment in the District of Columbia URESA action should be deducted from his current mortgage arrearages.

Shortly after the Balderston's divorce, Mr. Balderston fell behind in his child support payments. To enforce the support award, Mrs. Balderston secured the help of the Montgomery County State's Attorney's Office. The County filed a URESA action in the District of Columbia where Mr. Balderston had moved. Pursuant to the URESA petition, Judge Pryor of the District of Columbia ordered Mr. Balderston to pay $314 per month in child support.

While the District of Columbia case was pending, Mr. Balderston petitioned the court in Montgomery County to award him custody of the children or, in the alternative, to reduce his child support payments. On August 20, 1976,

Hon. John J. Mitchell, of the Montgomery County Circuit Court, after learning of the District of Columbia URESA action, ordered that the $14 overage (Mr. Balderston's child support obligation in Montgomery County was limited to $300 per month, i.e., $100 per month per child) from each URESA payment be applied toward the *child support* arrearages until satisfied. As of August 26, 1986, one child remained under the age of eighteen.

■ Lacking jurisdiction to modify the URESA order of the Superior Court of the District of Columbia, the Chancellor recommended that Mr. Balderston petition that court for a reduction of support payments. We agree and find no abuse of discretion.

JUDGMENT REVERSED.

CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE DIVIDED BETWEEN THE PARTIES.