## MARK WALLACE *v.* ELLEN WALLACE

[No. 1274, September Term, 1979.]

*Decided July 11, 1980.*

The cause was argued before LOWE, LISS and MACDANIEL, JJ.

*William J. Chen, Jr.,* for appellant.

*Ronald L. Ogens* for appellee.

MACDANIEL, J., delivered the opinion of the Court.

This is an appeal from a Decree entered October 24, 1979, in the Circuit Court for Montgomery County. Appellant Mark Wallace had filed exceptions to the Report and Recommendation of the Domestic Relations Master. On October 10, 1979, the Court, sitting in equity, entered an Opinion and Order denying the exceptions. The October 24th Decree contained the following provisions, among others:

1. Appellant was ordered to pay $300 per month to appellee Ellen M. Wallace as permanent alimony, from June 1, 1979.
2. Appellant was found delinquent in payment of alimony *pendente lite*; the arrearage was $4,825.
3. Judgment was entered against appellant for the $4,825 arrearage.
4. Appellant was ordered to pay $150 per month to liquidate the alimony *pendente lite* arrearage.
5. Appellant was ordered to pay $956.34 suit money and court costs.
6. Appellant was ordered to pay $4,000 as a contribution for attorney's fees incurred by appellee and the parties' minor children.

Appellant presents the following questions for decision:

I. Did the chancellor err in awarding alimony to an adulterous spouse?

II. Did the chancellor improperly fix the amount of alimony payable to appellee?

III. Did the chancellor err in awarding counsel fees and costs to appellee, and in awarding her a judgment against him for arrearages in *pendente lite* alimony?

We find no error in the chancellor's Decree, and so shall affirm.

The relevant facts are undisputed. The parties were married in New York City in 1967. They moved to Maryland, where appellant began to practice dentistry. Two children were born of the marriage, in 1971 and 1974. In December 1975 appellant hired Janet Honeycutt (the present Mrs. Wallace) as a dental assistant or secretary. In March 1976, without appellee's consent, appellant left the marital home. In late April or early May he began an adulterous relationship with his present wife. Also in May 1976, appellee committed adultery with one Norman Fox. It is clear however that there was no evidence of adultery by either party prior to their separation.

On March 21, 1977, appellee filed suit in the Circuit Court for Montgomery County to obtain a divorce *a mensa et thoro,* custody of her children, child support and alimony. The court entered an Order on September 22, 1977, granting appellee $550 per month alimony, custody and $150 child support per month per child, *pendente lite.*[1]

After appellee filed her suit, appellant moved to Virginia, established residence and, on April 5, 1978, obtained a Decree of Divorce *a vinculo matrimonii* from the Circuit Court for Alexandria. The divorce was granted upon the ground that the parties had lived separate and apart, without interruption and without cohabitation for a period in excess of one year. Soon thereafter, upon advice of counsel, appellant ceased making payments of alimony *pendente lite,* and continued to pay for child support only.

In June 1978 appellee filed an amended Bill of Complaint seeking, *inter alia, pendente lite* and permanent alimony,

---

1. It is unclear from the record whether in fact appellee was ever granted a divorce *a mensa et thoro.*

counsel fees and suit money, a determination of property rights and an award of arrearages in unpaid alimony *pendente lite.* The amended bill did not itself seek a divorce of any type, but merely a declaration "that the only viable ground upon which the Decree of the Circuit Court of the City of Alexandria, Virginia, was entered, was that of having lived separate and apart, without cohabitation, for a period in excess of one year." The Circuit Court referred the case to the Domestic Relations Master in August 1978. The Master conducted a hearing in December of that year, and, in June 1979, made his report to the court, which the court subsequently adopted in principal part, over appellant's objections.

## I.

Appellant first argues that the chancellor erred in awarding alimony in favor of appellee because the uncontroverted evidence established that appellee had engaged in adultery after the parties' separation, but prior to the grant of an absolute divorce. Appellant grounds this argument solely upon the Court of Appeals' holding in *Courson v. Courson,* 213 Md. 183 (1957), which appellant states as follows: a spouse who is guilty of marital misconduct by committing adultery after the parties' separation but prior to an absolute divorce is not entitled to alimony. Appellant points out that the chancellor was aware of the *Courson* opinion, but that he distinguished the case, and based his award upon two later opinions, *Flanagan v. Flanagan,* 270 Md. 335 (1973) and *Flood v. Flood,* 24 Md. App. 395 (1974). The chancellor reasons as follows:

> "The defendant would have this Court declare the plaintiff not entitled to an award of alimony due to her adulterous conduct after the separation of the parties. Although such a holding would be in accordance with the language and spirit of *Courson v. Courson,* 213 Md. 183 (1956), [sic] wherein adulterous conduct on the part of the wife after an *a mensa* divorce was found to terminate her right to

alimony, this Court is swayed by the reasoning of the Courts in the more recent opinion in *Flanagan v. Flanagan,* 270 Md. 335 (1973) and *Flood v. Flood,* 24 Md. App. 400 [sic] (1974). As was stated in *Flood,* at 400:

> '*Flanagan* leaves unanswered what happens in a nonculpable divorce suit when the actions of the wife seeking alimony do not constitute the sole cause for the demise of the marriage, but there is fault on both sides which caused the separation of the parties, and the fault of the wife is an act of adultery. We can only read *Flanagan* as holding that in such circumstances the chancellor should consider the degree of blame as well as the relative guilt of the parties, and, in conjunction with other factors to be considered, decide upon a proper award. As quoted *supra, Flanagan* declares: "The greater degree of fault on the part of the wife demonstrated, the greater the need which she must show to entitle her to an award of alimony appropriate to the circumstances otherwise existing." We note that the degree of fault on the part of the adulterous wife may be mitigated if the contributory fault of the husband is also an act of adultery.'
>
> The defendant husband's conduct in the case at hand was not as flagrant as that of the husband in *Flood,* nor was the wife's conduct in the case at hand as comparatively innocuous as that of the wife in *Flood* (wherein the parties were separated for some twelve years before the wife engaged in an adulterous relationship); however, we nonetheless concur in the Master's finding that the defendant husband must bear the lion's share of fault in the case at hand."

Like the chancellor below, we too think *Courson* does not control the result in this case, but for reasons which are not

adequately explained by our decision in *Flood.* We shall examine *Courson, Flanagan* and *Flood* in some detail.

In *Courson* the wife had obtained a divorce *a mensa et thoro* on the ground of desertion and was awarded alimony. Thereafter, she committed adultery, and the husband sought and received a divorce *a vinculo matrimonii* on this fault ground. On appeal however, the divorce was denied on the ground of recrimination. *Courson v. Courson,* 208 Md. 171 (1955). Thereafter, the husband petitioned the court for modification of the alimony awarded his wife in the *a mensa* proceedings, arguing as grounds his wife's adultery, proved in the *a vinculo* case. The lower court suspended the alimony subject to further order of the court, and the wife appealed. The Court of Appeals held that the wife was no longer entitled to alimony. Speaking for the Court, Judge Prescott stated:

> ". . . there is very respectable authority that holds that a wife's adultery is a defense to her claim for maintenance, notwithstanding the husband was likewise guilty of the same offense. . . .
>
> In this State, a limited divorce is one from bed and board. It grants unto the injured spouse the right to live separate and apart from the one at fault. However, the parties remain *man* and *wife,* and there is no severance of the marital bonds. Alimony stems from the common law duty of a man to support his wife, and, in Maryland, has always been considered as outlined above. We hold the proper rule, supported by reason and authority, is that when a wife, who is living separate and apart from her husband due to his fault and who has obtained no more than a limited divorce from him, commits adultery, she forfeits her right to her husband's support and the future payments of alimony. We agree with the New Jersey Court of Chancery in the case of G. . . . . . v. G. . . . . ., 56 A. 736, 740, when it said: 'Under a divorce *a mensa et thoro* the marriage relation still exists, and with it the duty of chastity. Such a divorce is not a license

to the wife to indulge in sexual connection with another man, ***.' Holding as we do, it afforded the wife no justification for complaint when the Chancellor suspended her alimony payments."

In *Flanagan, supra,* the husband obtained a divorce *a vinculo matrimonii* under the then-existing "no fault" provision of Article 16, § 24, of the Annotated Code of Maryland, on the ground that the parties had lived separate and apart, without interruption or cohabitation, for five years.[2] The wife sought alimony. Over the husband's objections, the chancellor refused to consider testimony regarding the wife's fault in the destruction of the marriage. The wife was awarded alimony and counsel fees, and the husband appealed. The wife argued that, in view of the fact that the *a vinculo* divorce had been granted on a "no fault"

---

2. It is important to have clearly in mind the particular "no fault" provision to which *Flanagan* refers. Article 16, § 24 lists two nonculpatory grounds for divorce which have both been labeled "no fault," (*see Flanagan, supra* at 337, and cases cited therein) though they differ from one another in a crucial way. Article 16, § 24 currently provides, in part:

> Upon a hearing of any bill for a divorce, the court may decree a divorce a vinculo matrimonii for the following causes, to wit: ... fifthly, when the husband and wife shall have voluntarily lived separate and apart, without cohabitation, for twelve consecutive months prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation; ... seventhly, on the application of either party when the husband and wife have lived separate and apart without any cohabitation and without interruption for three years. A plea of res adjudicata or of recrimination with respect to any other provisions of this section shall not be a bar to either party obtaining a divorce on this seventh ground."

While obtention of an *a vinculo* divorce upon the fifth ground requires proof that the parties voluntarily agreed to separate for the prescribed period, obtention of a divorce upon the seventh ground is available to either party "unilaterally," solely by virtue of separation for the prescribed period, even in the absence of agreement, and regardless of fault.

The fifth ground is also commonly referred to as voluntary separation. The first statute in this State authorizing the grant of a divorce *a vinculo matrimonii* in cases of voluntary separation was passed in 1937. (Acts, ch. 396, effective June 1, 1937). It may therefore be said that "no fault" in Maryland predates the *Courson* decision. However, when *Flanagan* and *Flood* refer to the effect of the subsequent availability of a "no fault" divorce upon the validity of *Courson's* holding, they refer not to the fifth ground (voluntary separation) but to the seventh ground (no fault) listed in Article 16, § 24. That provision was first added to § 24 by Laws of Maryland 1969, ch. 656, effective May 14, 1969.

ground, "fault is not in any place an element of the case and therefore is not to be considered in awarding alimony." The Court of Appeals disagreed: "A decision as to the proper award of alimony, while dependent upon the existence of grounds for divorce either *a vinculo* or *a mensa,* is separate and apart from that portion of the decree which grants the divorce." 270 Md. at 338. After making passing reference to *Courson,* the Court observed, at 339-40:

> "Throughout the years, our cases have said that when a wife's fault precludes her from procuring a divorce she is prevented from obtaining alimony. *Stein v. Stein,* 251 Md. 300, 302, 247 A.2d 266 (1968); *Keys v. Keys,* 251 Md. 247, 247 A.2d 282 (1968) and the cases cited in each. This result was axiomatic as a spouse's right to obtain a divorce, either *a vinculo* or *a mensa,* is a requirement for the obtention of alimony — ergo, no right to divorce, no right to alimony. But those cases are inapplicable here because 'no fault divorce' changes the predicament in which she would otherwise find herself, as either party regardless of fault can secure a divorce if he or she can meet the requirements of one of the authorized nonculpatory grounds. On the other hand, the previous opinions of this Court mentioned earlier, which establish the standards for fixing alimony in suits based on culpability, are applicable and make facile our determination that fault is one of the several factors to be considered in properly awarding alimony in a nonculpatory divorce as well. This is logically so and there is nothing in the public policy of Maryland as expressed in the statute to the contrary."

The Court then attempted to resolve "a more difficult decision": the extent to which fault affects an award which accompanies a decree of divorce on no fault grounds. The Court stated, at 341-42:

> "What is an appropriate award of alimony is

governed by the principles of equity regardless of the grounds for divorce. Its resolution has always been one of weighing countervailing interests. While the parties' economic circumstances are certainly of great importance, any of their conduct which contributed to the destruction of the marriage is also relevant to a determination of what is just. *Willoughby v. Willoughby,* 256 Md. at 593-94. As each factual situation is unique, it is obvious that the chancellor must be entrusted with wide discretion in awarding alimony. This would include those cases in which he is required to consider the culpability of the parties by taking into account the circumstances leading up to that point in time when the couple, who have been joined in marriage to become one, separate and become two once more, as well as the fault which destroyed the home. However, in those suits in which the actions of the party seeking such a pecuniary award constitute the sole cause for the demise of the marriage, and this wrongdoing consists of acts which are either adultery or abandonment, then, except in rare instances where there exist extremely extenuating circumstances, the award of any alimony would be an abuse of discretion. We have designated adultery and abandonment not on a whim, but because these are the only direct culpatory deeds that the Legislature has selected by name which either authorize or can ripen into grounds for an *a vinculo* divorce thereby indicating that it considers them the more heinous of the acts which can terminate a marriage. But, if there exists separation causing culpability other than adultery or abandonment on one side, or fault on both sides which caused the separation of the parties, the chancellor should consider the parties' degree of blame as well as their relative guilt in those cases where applicable and, in conjunction with the factors quoted earlier in this opinion, decide upon the proper award." (Footnote omitted.)

Finally, in *Flood, supra,* the husband's adultery caused the demise of the marriage. The parties were voluntarily separated, though neither obtained an *a mensa* divorce. Some eleven years later the wife committed adultery. A year or so after that, or twelve years after the parties' separation, the husband obtained an *a vinculo* divorce upon the no fault ground that the parties had been living separate and apart for at least five years. The husband appealed an award of permanent alimony presenting the single question whether a court could award alimony to a wife in a nonculpatory divorce action when it is shown that she committed adultery during the period of separation. This Court held that "in the facts and circumstances of the case before us, Wife did not forfeit her right to payment of alimony by her adulterous husband."

We first reviewed and compared *Courson* and *Flanagan,* and we stated, in *Flood,* at 24 Md. App. 399-400:

"Thus, *Flanagan* clearly concerned acts which caused or contributed to the separation of the parties, and which, therefore, were necessarily committed before the marriage's demise. *Courson* concerned acts committed after the separation of the parties was a *fait accompli.* Under *Flanagan,* if it is the wife's act which is the *sole cause* for the demise of the marriage, and that act is adultery, she is precluded from obtaining alimony 'except in rare instances where there exist extremely extenuating circumstances.' Under *Courson,* if the wife commits adultery after the separation, she *ipso facto* loses all right to alimony; not even the mercy of 'extremely extenuating circumstances' is indicated in *Courson.* So, to this point of comparison, it seems that an adulterous act causing the demise of a marriage is to be treated with somewhat more leniency than an adulterous act committed after the separation and not contributing to it. But in either event, the general rule is that the wife is not entitled to alimony.

*Flanagan* leaves unanswered what happens in a

nonculpable divorce suit when the actions of the wife seeking alimony do not constitute the sole cause for the demise of the marriage, but there is fault on both sides which caused the separation of the parties, and the fault of the wife is an act of adultery. We can only read *Flanagan* as holding that in such circumstances the chancellor should consider the degree of blame as well as the relative guilt of the parties, and, in conjunction with other factors to be considered, decide upon a proper award. As quoted *supra, Flanagan* declares: 'The greater degree of fault on the part of the wife demonstrated, the greater the need which she must show to entitle her to an award of alimony appropriate to the circumstances otherwise existing.' We note that the degree of fault on the part of the adulterous wife may be mitigated if the contributory fault of the husband is also an act of adultery.

The holdings of *Courson* and *Flanagan,* read together, may not be disparate, but they are anomalous. Under *Flanagan,* a wife whose act of adultery, committed before the fact of separation, contributed to it, may be awarded alimony if the husband is also guilty of wrongdoing contributing to the separation. But if she commits adultery after the fact of separation, she may not, under *Courson,* receive alimony in any event." (Footnote omitted.)

Upon review of the facts in the case, we then wrote, at 403:

"We would have no difficulty arriving at a resolution of the question along the path charted by *Courson.* Like *Courson,* here the fault of the husband caused the demise of the marriage. Like *Courson,* here the wife committed adultery after the fact of the separation of the parties. That in *Courson* the parties were legally separated by an *a mensa divorce* where here they were voluntarily separated, but not under legal aegis, is a distinction

without a difference. If all we had to look to was *Courson,* we would be obliged to hold the Wife forfeited her right to Husband's support and the payment of alimony. But we have *Flanagan* also, and its light casts shadows on *Courson's* path. For reasons we have indicated, we are hard pressed to apply the strict rule of *Courson* in the light of *Flanagan.* We think that *Flanagan* tempers *Courson's* rule, *sub silentio,* or by implication, or by practical necessity in the interest of justice, at least, as it may have been applicable in the factual posture of the case here reviewed."

Appellant argues that *Courson,* not *Flood,* must control our decision in this case. He suggests that the *Flood* decision "must be viewed under its particular facts and circumstances, and that it did not announce a new general principle of law in conflict with *Courson.*" Appellant further suggests that "the Chancellor erred in applying the *Flood* decision to the facts in this case wherein the wife engaged in adultery *shortly* after the parties' separation, and where there is no evidence whatsoever of any of the outrageous conduct that prompted this Court in *Flood* to relax the *Courson* rule." However, we find *Flood* controlling and *Courson* inapplicable here. Appellant appears to have been misled by our statements in *Flood,* at 399-400, that "[u]nder *Courson,* if the wife commits adultery after the separation, she *ipso facto* loses all right to alimony"; and "if she commits adultery after the fact of separation, she may not, under *Courson,* receive alimony in any event." Apparently, this misleading impression was not dispelled by our later statement in *Flood* that "[w]e think that *Flanagan* tempers *Courson's* rule, *sub silentio,* or by implication, or by practical necessity in the interest of justice". But the fact is that *Courson* was written prior to the enactment of the "no fault" provision (as opposed to the voluntary separation provision) of Article 16, § 24 in 1969.[3] On the other hand, in *Flood,* which was written in 1974, we recognized that a spouse's

---

**3.** *See* footnote 2, *supra.*

ability to obtain a "no fault" divorce preserved her right to obtain alimony, *ceteris paribus,* notwithstanding the fact of her adultery during the parties' separation.

To fully appreciate *Courson's* import — and limitations — one must understand the reasoning which underlies the result. A careful reading of the case reveals that its rule is grounded upon the relation between alimony and divorce: specifically, the way in which the right to the former depends upon the right to the latter. As the Court of Appeals stated in *Courson*:

> ". . . without exception, this Court has held that in a suit for alimony alone, the wife must allege and prove facts sufficient in themselves to support a decree for a divorce *a mensa* or *a vinculo.* In other words, in order that she be entitled to alimony, she must show she is entitled to either a partial or an absolute divorce. Among the many cases so holding, are: *Staub v. Staub,* 170 Md. 202, 208, 183 A. 605; *Hood v. Hood,* 138 Md. 355, 361, 113 A. 895; and *Polley v. Polley,* 128 Md. 60, 63, 97 A. 526.
>
> We shall quote briefly from several cases holding to like effect: The Court '\*\*\* can not allow itself to receive any matter as a sufficient ground for granting alimony alone, which would not be a sufficient foundation \*\*\* for granting a divorce *a mensa et thoro* together with its incident alimony \*\*\*'. *Outlaw v. Outlaw,* 118 Md. 498, 503, 84 A. 383; '\*\*\* alimony alone can only be granted upon grounds sufficient to justify a divorce *a vinculo* or *a mensa.' Polley v. Polley, supra;* and '\*\*\* there can be no allowance for alimony where there is no right to a divorce \*\*\*.' *Melson v. Melson,* 151 Md. 196, 205, 134 A. 136." 213 Md. at 186-87.

Thus, *Courson's* holding may be explained by noting that in that case the wife's adultery caused her to forfeit any and all rights to an *a vinculo* divorce which she may have had.[4]

---

4. As an aside, we note that since the inquiry focused on the propsective alimony *recipient's* right to a divorce, the husband's inability to obtain an *a vinculo* divorce was of no consequence.

Under these circumstances, the fault/no fault distinction is crucial. In *Courson,* adultery assumed significance only as it affected the wife's right to obtain a divorce. In *Flood,* on the other hand, the right to a no fault divorce existed notwithstanding the wife's adultery during the parties' separation. And since the act did not destroy the right to a divorce, it did not destroy the right to alimony. In the case *sub judice,* the facts are in all important aspects identical to those in *Flood.* Appellant's receipt of a divorce *a vinculo matrimonii* in this case, on nonculpable grounds, was a decree as much in appellee's favor as appellant's. *Flanagan, supra* at 338. At the time it was entered, appellee was equally entitled to receive one upon her own initiative. So, in this case, as in *Flood,* since appellee's adultery did not in fact foreclose her right to obtain an *a vinculo* divorce, it did not foreclose her right to obtain alimony either.

In *Flood,* it is not so much that *Flanagan* tempered *Courson,* but that the two cases apply under entirely different circumstances. In view of Mrs. Flood's right to obtain a divorce, we think *Courson* did not apply at all. And, indeed, since *Flanagan* suggests that, in a nonculpable divorce, adultery affects the right to alimony only insofar as the adultery contributed to the destruction of the marriage, it is hard to see how the wives' adultery, in *Flood* and this case, could have any bearing whatever upon the alimony award. In both cases the meretricious acts occurred *after* the destruction of the marriage. Unless these acts can be shown to have "related back" to that destruction, they would seem to have no place in the *Flanagan* test.

Therefore, to reiterate: the right to receive alimony is predicated upon the right to receive a divorce. In this case, appellee's acts of adultery, committed after the parties' separation but prior to the grant of an absolute divorce, did not foreclose her right to receive alimony. The parties were in fact divorced upon a "no fault" ground. When the divorce was entered, both were equally entitled to receive it, and it was as much in appellee's favor as appellant's. This being so, *Courson's* rule is inapplicable; appellee's adultery did not automatically bar her right to receive alimony.

## II.

Appellant next contends that the chancellor erred in making an award of alimony in this case, (a) because of the incomplete and inadequate record of the appellant's financial affairs and (b) because the fault of the wife was not appropriately weighed by the chancellor in making an award of alimony. Appellant draws our attention to the fact that the master found that a "full and complete audit" of appellant's "business, professional, personal and otherwise" activities was required, and that the master concluded that "there is a need for such an audit, together with the conclusions of the auditor, prior to the final assessment of both alimony and child support." The chancellor found an audit unnecessary, and made his determination and award based upon the record presented by the master.

In *Quinn v. Quinn,* 11 Md. App. 638 (1971), this Court stated, at 643-44:

> "It was held in *Waters v. Waters,* 191 Md. 436, that in determining an award of alimony and whether, under the statute, the wife's income 'is insufficient to care for her needs,' the court should consider the husband's wealth and earning capacity, the assets and income of the wife, the station in life of the parties, their age, physical condition, and ability to work, the length of time the parties lived together, the circumstances leading up to the divorce, and the fault which destroyed the home. To the same effect, *see Burton v. Burton,* 253 Md. 233; *Newmeyer v. Newmeyer,* 216 Md. 431. The husband's overall financial ability to support (and not merely his current income), and the wife's need for support are controlling factors. *Willoughby v. Willoughby,* 256 Md. 590; *Pet v. Pet,* 238 Md. 492; *Gosnell v. Gosnell,* 208 Md. 179; *Lopez v. Lopez,* 206 Md. 509. In view of the variable factors to be considered in determining the alimony award, no fixed rule exists whereby the amount of the award is based on a percentage of the husband's wealth or income.

> *Bowis v. Bowis, supra.* Because each factual situation in determining an award of alimony is unique, making inappropriate the application of any mechanical or rigid formula, the Chancellor is necessarily entrusted with wide discretion which should not be disturbed on appeal unless it was arbitrarily used or his judgment clearly wrong. *Blumenthal v. Blumenthal,* 258 Md. 534; *Willoughby v. Willoughby, supra."*

And *see Colburn v. Colburn,* 15 Md. App. 503 (1972).

Upon review of the record in this case we find no error in the chancellor's award. In the first place, the chancellor determined that appellant could reasonably be expected to pay alimony of $300 per month, and there was ample evidence to support that determination. The uncontroverted evidence was that appellant would continue to have an income far in excess of the $623.17 per month which he reported on his financial statement. Appellee presented the testimony of a certified public accountant that appellant had made cash withdrawals from his dental practice in excess of $40,000 during 1977, and appellant presented no evidence to contradict the CPA's testimony. The CPA's further testimony, and the testimony given by appellant himself, cast serious doubt upon the accuracy of appellant's financial report to the court. But, without making an exact finding as to dollar amount, the chancellor was certainly entitled to determine that appellant's income was far in excess of that reported, and this was all that was necessary in this case.

In the second place, there was also ample evidence from which the chancellor could determine that "the fault which destroyed the home" was entirely appellant's. Indeed, the record is undisputed that appellant left the marital home; and appellant presented no evidence whatever to suggest the way in which appellee was to blame for his departure. Under the circumstances of this case, appellee was not required to prove desertion, but only the facts which led up to the separation and subsequent destruction of the marriage, and this she did. *Timanus v. Timanus,* 178 Md. 640 (1940). At

any rate, the chancellor found that appellant deserved the "lion's share" of the fault, and we think it implicitly clear from this that he did consider the parties' relative responsibility for the destruction of the marriage.

### III.

Finally, appellant argues that the chancellor erred in awarding a judgment and costs, including attorney's fees, against him. Specifically, appellant challenges the entry of a judgment against him for $4,825 unpaid alimony *pendente lite* on the grounds raised earlier, *i.e.,* that under the facts in this case appellee's adultery deprived her of the right to alimony. Our holding in Part I of this Opinion, that appellee was entitled to alimony, disposes of this issue.

Appellant also alleges error to the chancellor's award of costs and suit money in the amount of $956.34, and to his order that appellant contribute $4,000 on account of legal services rendered to appellee and on behalf of the parties' minor children.

Counsel fees are ordinarily awarded in a divorce case according to the ordinary factors of labor, skill, time and benefit, as well as the financial resources of the party charged. *Quinn v. Quinn, supra.* The amount of the award of counsel fees is generally within the discretion of the trial court, and the award should not be disturbed unless the trier of fact has exercised his discretion arbitrarily or his judgment was clearly wrong. *Danziger v. Danziger,* 208 Md. 469 (1955); *Sody v. Sody,* 32 Md. App. 644 (1976).

Appellant supports this allegation of error with the same argument raised earlier, *i.e.,* that the award was error in view of the "substantial discrepancies and in the absence of credible evidence with respect to the husband's net worth and earning capacity." Again, we think our decision in Part II of this Opinion disposes of this issue. We emphasize once again that in our view there was sufficient evidence on the record to support the chancellor's findings, notwithstanding any discrepancies in the testimony which may have existed,

and which, at any rate, appellant did nothing to explain or dispel.

In closing, we note that appellee has filed a petition to this Court requesting that we enter an Order assessing counsel fees of $4,940 in her favor in connection with this appeal. Appellee's motion is denied. As in *Staley v. Staley,* 25 Md. App. 99, 114 (1975),

> "We shall remand this case in order to permit the trial court to make a proper allowance for counsel fees for prosecuting this appeal. In order to arrive at an appropriate determination, the trial court shall take further testimony in regard to the financial status of the parties, their respective needs, the amount of legal services rendered, and the reasonable value of such services."

*Judgment affirmed.*
*Case remanded for further proceedings as to counsel fees.*
*Appellant to pay the costs.*