# ELIZABETH S. DUSKIN *v.* GERALD L. DUSKIN

[No. 1004, September Term, 1981.]

*Decided April 13, 1982.*

The cause was argued before WEANT and BISHOP, JJ., and

JAMES S. GETTY, Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Nelson M. Oneglia,* with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker P.A.* on the brief, for appellant.

*Raymond Rabin* for appellee.

BISHOP, J., delivered the opinion of the Court.

During its 1978 session the General Assembly of Maryland enacted legislation which granted equity courts authority to provide for the disposition and use of property in conjunction with a divorce or annulment. Laws of Maryland, ch. 794, § 1 (1978). This statute is now codified as Md. Cts. & Jud. Proc. Code Ann. § 3-603 and §§ 3-6A-01 to 3-6A-07 (1980 Repl. Vol., 1981 Cum. Supp.). Section 2 of chapter 794 provides that "This Act shall take effect January 1, 1979 and shall apply only to cases filed after that date."

This appeal, from a final decree of divorce *a vinculo matrimonii* granted by the Circuit Court for Montgomery County, requires this Court to interpret Section 2 in an unusual factual context.

## The Facts

Elizabeth S. Duskin, the appellant, and Gerald L. Duskin, the appellee, were married in 1957. On or about April 26, 1978, the parties separated and on June 23, 1978 the appellant filed a bill of complaint in the Circuit Court for Montgomery County for injunctive relief and divorce *a mensa et thoro* alleging appellee's cruelty. This case was designated Equity No. 63525. The appellee answered the bill of complaint and on July 7, 1978 filed a counterclaim for divorce *a mensa et thoro,* also alleging cruelty. The appellant filed a timely answer to the appellee's counterclaim, and on December 29, 1978 filed an amendment to her bill of complaint which deleted any claim or request for divorce *a mensa et thoro.* On June 14, 1979 the appellee filed a supple-

mental cross-bill of complaint for divorce *a vinculo matrimonii* in Equity No. 63525. In this cross-bill the appellee reiterated the allegations of the appellant's cruelty which he had set forth in his counterclaim, and he stated that the parties continued their voluntary separation as set forth in the appellant's bill of complaint.

The appellant answered the appellee's supplemental cross-bill of complaint and on July 23, 1979 she filed a bill of complaint for divorce *a vinculo matrimonii* on the grounds of appellee's cruelty and the parties' voluntary separation. This bill of complaint was assigned Equity No. 67957. On October 4, 1979, the appellee filed a motion raising preliminary objection to the appellant's second bill of complaint on the grounds that his supplemental cross-bill of complaint constituted a pending action between the same parties for the same cause in Equity No. 63525. Following a hearing on the appellant's motion, the Circuit Court, by an order filed on February 6, 1980, denied the motion without prejudice to the appellee "to raise this matter at the time of the hearing on the merits." By that same order the Circuit Court also consolidated for trial Equity Nos. 67957 and 63525. All subsequent documents pertaining to the case bear the designation of "Equity No. 63525" or "Equity No. 63525, 67957 (Consolidated)."

Trial was held on February 23, 24 and 26, 1981. During the last day of trial the chancellor concluded:

> "That on or about the 25th day of April, 1978, the parties did voluntarily and mutually agree to live separate and apart and have lived separate and apart since that time without any reasonable hope or expectation of a reconciliation.
>
> That immediately brings me to the first place where I have to go and that is I have now found sufficient facts on which to award a divorce a vinculo, but I have to first meet the question of which case I can go under.
>
> The posture of the case is this: In 63525 an original complaint was filed by Mrs. Duskin on

June 23, 1978, for divorce a vinculo [sic]. On June 14, 1979, the husband filed a supplemental cross-bill for a divorce a vinculo on the grounds of voluntary separation. On July 23, 1979, the new bill was filed in separate action 67957.

The problem I face is this, and that is I have to reach — since they have both filed for the same grounds; namely, on the grounds of voluntary separation, I have to reach the one which was first filed in time and, therefore, I have to reach the one, the supplemental cross-bill that was filed by Mr. Duskin, although I might not particularly wish to do that, that is the way I have to follow the law and that is what I have to do. I cannot leap over that and go directly to the other one, . . . .

I have carefully read the Mollar case looking for some sort of help that might allow me to go along with the Mollar case, but I could not find it.[1]

In that case there were two totally distinct cases in the form of what the grounds were. In other words, his was for constructive desertion and hers was for desertion and, therefore, in that case they said, no, he didn't prove his claim and, therefore, he was — his case was out, and therefore they could go to the other one and find it.

We don't have that here. I just have the same grounds, and so I have to reach that one first.

At any rate, so, I found I really was not able to use that as an authority to do it, so therefore I have to give the divorce to Mr. Duskin on the non-culpatory ground of voluntary separation for one year."

On March 20, 1981, the chancellor filed her final decree that the appellee be divorced *a vinculo matrimonii* from the appellant "in Equity No. 63525." It was further ordered that the appellant be awarded custody of the parties' minor child

---

1. The chancellor read an unreported circuit court opinion in the case of Mohler v. Mohler, Equity No. 97685, 98700 (Cir. Ct. for Balt. Co., 1980).

and that appellee pay appellant $650.00 per month child support and $5,000.00 towards appellant's attorney's fees.

## Application of the Marital Property Act

### 1. A Case with Supplemental Pleadings

On appeal the appellant contends that the chancellor abused her discretion by not applying the Marital Property Act, Md. Cts. & Jud. Proc. Code Ann. §§ 3-6A-01 to 3-6A-07 to the present case. In her brief the appellant supports this contention, without reference to case law, by asserting that the Act "Should be interpreted liberally in close cases to advance the remedy and obviate the mischief at which [the Act is] directed." At oral argument the appellant renewed this assertion in a modified form, citing *Wallace v. Wallace,* 46 Md. App. 213, 416 A.2d 1317 (1980) for the proposition that the chancellor "could have granted" a divorce to the appellee while awarding alimony and property to the benefit of the appellant.

The appellee replies by contending that the chancellor's final decree, which was not based on the Marital Property Act, is sustainable in light of this Court's recent interpretation of the effective date clause of the Marital Property Act — Laws of Maryland, ch. 794, § 2 (1978).

In *Athanason v. Athanason,* 48 Md. App. 232, 426 A.2d 16 (1981), this Court held that Section 2 precluded the application of the Marital Property Act to a case in which a wife filed a bill of complaint for divorce *a mensa et thoro* in 1978, and then in 1979 filed a supplemental bill of complaint for divorce *a vinculo matrimonii.* Unlike the present case, in *Athanason, supra,* the same party filed both the original bill of complaint prior to 1979 and filed the supplemental bill under which the divorce *a vinculo matrimonii* was granted. Moreover, in *Athanason* neither party filed in 1979 a second bill of complaint which was designated with a second equity number. Because of these factual distinctions between *Athanason* and the present case we cannot find *Athanason* completely dispositive of the present question concerning application of the Marital Property Act.

The introduction into the present case of a second bill of complaint creates a significant distinction between this case and *Athanason.* As the Hon. Benjamin L. Cardin, Speaker of the House of Delegates, noted in his discussion of the effective date clause of the Marital Property Act, distinct issues exist as to whether the Act applies 1) if a cross-bill was filed after January 1, 1979, although the original papers were filed prior to January 1, 1979, and 2) if a separate bill of complaint was filed after January 1, 1979, but another bill of complaint was pending and was filed prior to January 1, 1979. B. Cardin, "Property Disposition in Divorce and Annulment," in Maryland *Divorce and Separation Law* 61-62 (J. W. Ester, ed. 1979). *See also,* "Property Distribution Upon Divorce in Maryland" 8 Balt. L. Rev. 377, 379-380, n. 23 (1979), in which the student writer identifies "several interim problems" with the Marital Property Act, including 1) "whether an action filed prior to January 1, 1979 can be amended or supplemented and thereby qualify as a new action within the Statutory provisions;" and 2) "it is not clear which law would apply if one spouse filed a bill of divorce prior to January 1, 1979 and the other [or same spouse] filed after that date. . . . If the second bill for divorce withstands a preliminary objection, it is not clear what law would apply if the cases were consolidated."

The decision in *Athanason, supra,* that a supplemental bill of complaint for divorce filed in 1979 would "relate back" to the 1978 filing date of the original bill of complaint, effectively solves the first hypothetical problem posed by Speaker Cardin and the law review author. It remains for this Court now to determine whether the Marital Property Act applied in a more complicated circumstance.

Clearly, when the present case began with the filing on June 23, 1978 of the appellant's bill of complaint for divorce *a mensa et thoro,* the Marital Property Act could not have been applied in an adjudication on that bill. Likewise the Act could not have been applied to the appellee's counterclaim file on July 7, 1978. *Bender v. Bender,* 282 Md. 525, 535, 386 A.2d 772, n. 7 (1978).

If the present case had been jointly tried on the appellant's

original bill of complaint, on the appellee's counterclaim and his supplemental crossbill of complaint for divorce *a vinculo matrimonii* filed on June 14, 1979, then the Marital Property Act still could not be applied to the case. *Athanason, supra,* would preclude application of the Act because *Athanason* controls any case initiated prior to 1979 in which the parties first sought a legal separation, and then supplemented or amended their case in 1979 for the purpose of obtaining an absolute divorce. Regardless of which party supplemented the initial pleadings, and despite the 1979 filing date of the supplementation, the controlling date for application of the Marital Property Act to such a case is not the 1979 filing date of the supplemental bill, but the 1978 filing date of original pleadings. Section 2 of the Statute permits the Act's application only to cases filed after January 1, 1979, and as this Court held in *Athanason, supra,* 48 Md. App. at 234, "a supplemental bill is not a case."

## 2. *Consolidated Case*

Having determined that the initial and supplemental pleadings for Equity No. 63525 could properly have been adjudicated without application of the Marital Property Act, we must now determine whether the lower court was required to apply the Act in the consolidated adjudication of Equity No. 63525, 67957. For the reasons set forth in the remainder of the opinion we hold that Laws of Maryland, ch. 794, § 2 (1978) does not require the application of the Marital Property Act, Md. Cts. & Jud. Proc. Code Ann. §§ 3-6A-01 — 3-6A-07 in a consolidated case if the original pleadings of the case were filed prior to January 1, 1979. Therefore, in declining to apply the Act in the present case, the chancellor did not abuse her discretion.

Our conclusion in this appeal necessarily follows from an analysis of the legislative intent behind the Marital Property Act and from the applicable case law. In *Athanason, supra,* at 234, we found that the language of Section 2 was "sensible and free from ambiguity," and that by that language the legislature clearly expressed its intention to limit the application of the Act to actual cases filed after the Act's

effective date. That date, January 1, 1979, was postponed from the date of the Act's approval, May 29, 1978, to allow interested parties sufficient time to become conversant with the statute. *Id.* at 235. As Judge MacDaniel stated in *Athanason* at 235, this deliberate limitation also allows the Act, "to run 'afresh' from some point in time." Moreover, the strict cutoff-date of Section 2 has spared Maryland courts the entangling litigation which can result from the retroactive application of more permissive marital and community property statutes. *See e.g., Schubert v. Schubert,* 66 Ill. App. 3d 29, 383 N.E.2d 266 (App. Ct. 1978) remanded by the Appellate Court of Illinois for application of that State's Marriage and Dissolution of Marriage Act to a case which was initiated four months prior to the effective date of the statute; *see also* those cases cited in *Uniform Marriage and Divorce Act* (U.L.A. West) § 502 (1979, 1982 Cum. Supp.).

Supporting her contention that the chancellor should have granted separate judgments in the consolidated case, the appellant does not refer us to judicial authority but rather cites Md. Rule 606 for the proposition that "in consolidated trials the court may render joint or separate judgments as justice may require." Justice, according to the appellant, "requires application of the new Marital Property Act." The appellant then concludes that the chancellor's final decree, a joint judgment entered in the consolidated case, was "arbitrary." By the proper exercise of judicial discretion, the appellant submits, "The chancellor should have decided property distribution questions under Equity No. 67957 despite the fact that [the] divorce was granted technically in Equity No. 63525.

Nothing in the appellant's brief supports the assertion that the chancellor was required to apply the Marital Property Act for the benefit of the appellant. At oral argument appellant reasoned that such a requirement exists because the chancellor had "discretion and ability" to apply the Act, and because she "did not have to" rely on the prior law of property distribution. This line of reasoning fails in light of the appellant's concession in her brief that "when cases are consolidated for trial, they become for the purpose of trial

one case. *Holloway v. Wright,* 21 Md. App. 615, 320 A.2d 572 (1974)."

In *Holloway, supra,* at 617, n. 1, we cited Md. Rule 503 for the principle that:

> "When two or more cases are consolidated, there are multiple parties, multiple claims, and multiple counts, but they become for the purpose of trial, *one case.*" (Emphasis added).

By invoking Md. Rule 503 litigants may persuade a court to create from many cases, one. This doctrine was applied by the Court of Appeals in *Daniels v. State, Exc.,* 243 Md. 244, 248, 220 A.2d 604 (1966) when the Court held that the filing of a motion for a new trial in only one action of a consolidated case precluded the entry of a judgment for costs in another action of that case.

A chancellor may decide that the various actions in a consolidated case are so distinct that separate judgments ought to be rendered pursuant to Md. Rule 606. *Coppage v. Resolute Insurance Co.,* 264 Md. 261, 263, 285 A.2d 626 (1972). If the parties and subject matter of a consolidated case are the same or substantially similar, then a chancellor reasonably may grant a joint judgment in the final decree. *See Pitts v. Pitts,* 181 Md. 182, 29 A.2d 300 (1942) in which the Court of Appeals ruled that the parties and issues of a consolidated divorce and custody case were "intimately associated," and, therefore, properly consolidated. Discussing the effect of the consolidation the Court quoted from *Miller, Equity Procedure,* § 236 (1897 edit.):

> "[A]pplying the maxim 'Equity prevents multiplicity of suits,' cases pending at the same time in the same court in relation to the same subject matter and which can be conveniently determined by one decree, may be consolidated by order passed after due notice. The avoiding of several suits and the consequent expenses, and the convenience of the thing by facilitating progress, are the advantages of consolidation in proper cases.

> When consolidated, the rights of all parties are as fully before the court *as if they had been originally combined in one suit." Id.* at 191 (emphasis added).

Based on the aforementioned authorities we find that when the Circuit Court for Montgomery County consolidated Equity No. 63525 and Equity No. 67957, the court created one case. For purposes of analysis under Section 2 of the Marital Property Act, the original bill of complaint for that one case was the appellant's bill of complaint filed on June 23, 1978 and never dismissed. Just as the appellee's supplemental pleadings became "a part of the original case," *Athanason, supra,* at 234, so the appellant's bill of complaint filed on July 23, 1979 became tantamount to a supplementation of her original bill of complaint.

The substantial similarity between the appellant's second bill of complaint and her original bill of complaint supports our finding that the second bill of complaint did not initiate a "separate proceeding" which might be adjudicated under the Marital Property Act. *See* 63 Atty. Gen. Opin. 472, 475-476 (1978), wherein the Attorney General opined that "the mere institution of an action for alimony without divorce prior to January 1, 1979 will not render a *separate* proceeding instituted after that date 'a case filed prior thereto' for the purposes of Section 2" (emphasis added). The appellant's second bill of complaint alleged 1) that the parties had lived apart since on or about April 26, 1978; 2) that the appellee treated the appellant "with extreme cruelty and contempt"; 3) and that he had returned on one occasion to the marital abode. These allegations restate the cause of action set forth in the appellant's original bill of complaint wherein she averred 1) that the parties commenced living apart on April 26, 1978; 2) that the appellant's conduct constituted "cruelty of treatment"; 3) and that the appellant had threatened to move back to the marital abode.

The appellant's cause of action was adequately set forth in her original bill of complaint, and no new cause of action was interjected by the second bill of complaint. Thus, the second bill constituted nothing more than an "emanation of the

same cause of action" previously asserted, and it "relates back to the time of filing of the original bill . . ." *See Prince George's County v. Blumberg,* 44 Md. App. 79, 109-110, 407 A.2d 1151, *reversed* on other grounds, (1979) applying this rule in a statute of limitations context; *see also Mt. Sinai Hospital v. Mora,* 342 So. 2d 1063, 1064 (Fla. App. 1977), in which a Florida appellate court found that a third-party complaint filed after the effective date of a malpractice mediation statute was an integral part of the malpractice case that commenced prior to the statute's effective date, and that the case was exempted from the mediation requirement.

Rather than stating a new cause of action, the appellant's second bill of complaint differs from the original complaint only in its requested remedies, *i.e.,* divorce *a vinculo* and application of the Marital Property Act. The appellant's apparent motive for filing a second bill of complaint was to seek application of the Act, as indicated in the appellant's opposition to the appellee's motion raising preliminary objection to the appellant's second bill of complaint. The appellant requested the lower court to deny the appellee's motion so that she could "seek . . . the relief afforded by the new Domestic Relations Law of Maryland, Chapter 794, Acts of 1978." At trial the appellant was provided an opportunity to seek such relief, but the lower court did not err in refusing to provide the appellant with the benefits of the Marital Property Act.

## Attorney's Fees

At trial the appellant requested the lower court to order the appellee to pay her attorney's fees. Based on evidence adduced during the trial the chancellor determined that the appellant had incurred legal expenses totaling $15,000.00, and that the appellee's legal expenses amounted to $23,000.00. Relying on testimony concerning the reasonableness of the attorney's fees, the chancellor awarded the appellant $5,000.00 for the services of her attorney, Mr.

Oneglia. The chancellor refused to make an award for services charged by another attorney of the appellant, Mr. Skalet, because of insufficient evidence that these latter expenses were reasonable or necessary.

On appeal the appellant contends that sufficient evidence of the reasonableness of Mr. Skalet's fees was offered at trial, but that the chancellor erred in sustaining appellee's objections to the admission of the proffered evidence. The record reveals that this excluded evidence consists of an unitemized bill from Mr. Skalet, and proffered testimony as to the amount that an attorney would earn from such a domestic relations case.

Attorney's fees are awarded in a divorce case according to the factors of labor, skill, time, and benefit, as well as the financial resources of the party charged. *Wallace v. Wallace,* 46 Md. App. 213, 229, 416 A.2d 1317 (1980). The amount of the award of attorney's fees is within the chancellor's sound discretion, and this Court may not disturb that award absent evidence of an abuse of that discretion. *Sody v. Sody,* 32 Md. App. 644, 363 A.2d 568 (1976). Upon review of the record we find no abuse of discretion.

> *Judgment affirmed; appellant to pay costs.*