484 A.2d 1054

**Margaret Maisel YOUNG**

v.

**Anthony John YOUNG.**

**No. 412, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Dec. 12, 1984.

Thomas Bowie McCarty, Catonsville, for appellant.

Lewis Straughn Nippard, Ellicott City, for appellee.

Argued before ADKINS and ROSALYN B. BELL, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ROSALYN B. BELL, Judge.

■ Effective July 1, 1980, the scope and attributes of alimony changed markedly. The new characteristics cannot be engrafted on an old award through a Motion to Modify.

Margaret Young married Anthony Young, now a medical doctor, in 1963. Four children were born of that union, and two of those children are over eighteen. In April of 1980, Mrs. Young filed a bill of complaint for a divorce a mensa et thoro. This bill was supplemented with a bill for divorce a vinculo matrimonii. It will not add to an understanding of this case to recount the events leading up to the separation and divorce or the relief afforded to Mrs. Young. Suffice it to say that Mrs. Young had no difficulty establishing constructive desertion on the part of Dr. Young and establishing her lack of fault.

After trial a decree for divorce a vinculo was entered, under which Mrs. Young was awarded alimony of $625 per month and other relief. Two years later, Dr. Young sought a modification of that order, requesting several changes including termination of the alimony. On August 10, 1983, the chancellor reduced the amount of alimony and directed it terminate as of December 31, 1986.

Mrs. Young appeals the modification and asks:

I. Whether the chancellor erred in applying to a pre-July 1, 1980 case the alimony standards set out in Maryland

Annotated Code, Article 16, Section 1 (1980 Ch. 575, Section 2), and

II. Whether the chancellor erred in ordering termination of alimony on a future fixed date.

We hold the chancellor erred, and will explain our reasons.

## I. THE APPEAL

■ The offending order terminating the alimony was entered August 10, 1983. The order denying the reconsideration was dated January 10, 1984, and the appeal was noted on February 9, 1984. Mrs. Young appeals from the order of January 10, 1984. Our level of review is whether the chancellor abused his discretion in denying that motion. *New Freedom Corp. v. Brown*, 260 Md. 383, 272 A.2d 401 (1971).

■ As we progress through these events with the Youngs, August 10, 1983, is but one of the crucial dates involved. The Motion for Reconsideration under Maryland Rule 625 did not extend the time for appeal and this remains the situation under Rule 2–535 [1].

For reasons that will appear later, we conclude that the chancellor did apply the wrong alimony law. In the motion for reconsideration, counsel for Mrs. Young made this crystal clear to the chancellor, and counsel for Dr. Young in effect conceded that Mrs. Young was correct. The chancellor, however, persisted in his application of the new law. Since he was given ample opportunity to correct that error

---

1. Rule 2–535 became effective July 1, 1984. A more flexible procedure is now available under Rule 2–534, also effective on that date. If under this Rule a Motion to Alter or Amend is filed within 10 days of the entry of judgment in an action tried before the court the time for appeal is extended. Under amended Rule 1012, if a timely motion is filed, the order for appeal need only be filed within 30 days from the entry of the order disposing of the motion. Of equal significance is that if the order for appeal is filed before the disposition of the motion, it is of no effect and a new order must then be filed.

and declined to do so, we hold the chancellor abused his discretion in denying the motion for reconsideration.

## II. WHAT LAW GOVERNS

In 1777, the courts of equity in this State were granted the right to hear all causes for alimony. The legislature enacted Chapter 262 in 1841. In § 3 of that Chapter, after enumerating the grounds on which a divorce could be granted, it provided "in all cases where a divorce is decreed, the court passing the same shall have full power to award alimony to the wife ..." Over the years the wording has been reshaped. The changes were largely nods to trends toward language simplification, but one was a bow to the Equal Rights Amendment, Article 46 of the Maryland Declaration of Rights ratified in 1972. As of April, 1980, when Mrs. Young filed for divorce, Md.Code Ann., Art. 16, § 3 read: "In cases where a divorce is decreed, alimony may be awarded to either spouse." Over the years a disproportionate amount of case law built up around that short provision and its predecessors. Before we delve into case law we must consider the action the legislature took at about the time Mrs. Young filed her suit.

After almost 140 years of use Article 16, § 3 disappeared from the Laws of Maryland and was replaced by Chapter 575, Acts of 1980 which became Article 16, § 1 [2] *et seq.*, entitled "Alimony". This has been referred to as "rehabilitative alimony". In brief, the new statute removed fault as a bar to the award of alimony, specified 11 factors for the court to consider in determining the award, and directed the court to fix a date when alimony would cease. It also permitted indefinite alimony under certain specified circumstances. Our first concern here is that § 3 of Chapter 575 provides that the Act "shall take effect July 1, 1980, and shall apply only to cases filed after that date."

---

2. Now Md.Family Law Code Ann. § 11–101 *et seq.* effective October 1, 1984.

We have not had occasion to consider this precise point before, but we have dealt with a virtually identical question in the application of the Property Disposition in Annulment and Divorce Act, now in Md.Family Law Code Ann. § 8–201–213. In that Act the effectuating words were precisely the same except for the date, "January 1, 1979." In *Athanason v. Athanason,* 48 Md.App. 231, 426 A.2d 16 (1981), we held where an original bill was filed prior to the crucial date, a supplemental bill filed after the date does not create a "case filed after." We note that an amended bill may set up grounds which existed on the date of the first pleading and relate back, while a supplemental bill presents grounds which have occurred subsequent to the filing of the original bill. The fact that the basis for the relief sought did not arise until after the January 1, 1979, date did not qualify it as a case filed after that date.

The second time we explored the meaning of "cases filed after" was in a more complex situation. In *Duskin v. Duskin,* 51 Md.App. 451, 443 A.2d 1010 (1982), the wife filed suit for a divorce a mensa, and the husband filed a counterbill. The wife thereafter withdrew her claim for divorce, and the husband, in turn, filed a supplemental bill for divorce a vinculo. All this occurred prior to the Act's effective date. Immediately following January 1, 1979, the wife filed a new action for divorce a vinculo seeking a monetary award. The cases were consolidated for trial. The chancellor awarded an absolute divorce on the grounds of voluntary separation as pled first by the husband in his supplemental bill filed just before the January 1st date. This Court held that the new law would not apply to a consolidated case where the original pleadings were filed prior to the effective date of the Act. Relying on *Holloway v. Wright,* 21 Md.App. 615, 320 A.2d 572 (1974), citing Md.Rule 503 [3], we held that

"[w]hen two or more cases are consolidated, there are multiple parties, multiple claims, and multiple counts, but

---

**3.** Now Md.Rule 2–503(a), effective July 1, 1984.

they become for the purpose of trial, *one case."* (emphasis added in original.)

51 Md.App. at 459, 443 A.2d 1010.

■ We assert here, as we did in *Athanason* and *Duskin,* that the "cardinal rule" to be followed in ascertaining and effectuating legislative intent is to look at the language itself. If the words are clear and unambiguous and the meaning sensible, then that is what the legislature meant. We reiterate what we said in *Athanason* and *Duskin* that when the legislature stated "this Act shall take effect July 1, 1980, and shall apply only to cases filed after that date," the legislature meant just that. A petition to modify alimony awarded in this State does not establish a new case. Thus, the pre-July 1, 1980 alimony law is applicable here.

### III.  POST–JULY 1, 1980 LAW WAS APPLIED.

The chancellor here followed the law applicable only to cases filed after July 1, 1980. Any doubt is resolved by looking at the Memorandum and Order of Modification, in which the chancellor ordered that the alimony would cease prospectively on December 31, 1986. Termination dates are an addition of the post-July 1, 1980 alimony law. The chancellor stated "If, however, the standards of living between the parties at that time are too disparate, the Court will entertain a further extension of alimony payments." This is language from the post-July 1, 1980, alimony statute. There was no matching concept under the prior law. In his Memorandum following a request for reconsideration, the chancellor did recognize the problem and opined that he felt his action was justified under either act. He added "[o]f course, the [date provided for] termination does not have that finality ordinarily connoted by such a term." We conclude it has no finality.

■ The chancellor erroneously applied the post-July 1, 1980, alimony law to achieve the modification.

## IV. TERMINATION

Appellee attempts to justify the action of the chancellor by suggesting there is ample case law to permit modification of pre-July 1, 1980 alimony. We agree that case law does permit modification of court ordered alimony, but as we will discuss, since the parameters of the two types of alimony differ, the modification permitted likewise varies.

Alimony as it has existed for approximately 140 years is not defined by Maryland statute and hence, we must look to the case law to determine its boundaries. Alimony is maintenance afforded one spouse out of the income of the other. For most of those 140 years the payment was solely available for the benefit of the wife. As we noted earlier this was changed upon the enactment of the Maryland Equal Rights Amendment to make it available for either spouse. It was allowable against a spouse who refused to provide support or whose conduct compelled the innocent spouse to leave. The provision remained in effect during the parties' joint lives, or until the remarriage of the recipient, and continued so long as they lived separate and apart. *Staub v. Staub,* 170 Md. 202, 207–08, 183 A. 605 (1936); *Simpson v. Simpson,* 18 Md.App. 626, 308 A.2d 410 (1973). Before July 1, 1980, alimony as ordered by the court was always subject to reconsideration and modification in light of changed circumstances. *Sugarman v. Sugarman,* 197 Md. 182, 78 A.2d 456 (1951).

Alimony as awarded in cases filed after July 1, 1980, is similarly statutorily undefined. We glean its characteristics from the statute itself.

Alimony is the payment by one spouse to the other of a fair and equitable amount based on consideration of all necessary factors including:

"(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties; and

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article;

(iii) the nature and amount of the financial obligations of each party; and

(iv) the right of each party to receive retirement benefits."

Md.Family Law Code Ann. § 11–106 (1984).

Generally awarded for a limited period, alimony may be granted for an indefinite period when the court finds as a fact that:

"(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate."

Md.Family Law Code Ann. § 11–106 (1984).

In the absence of an agreement alimony terminates on the death of either party, the marriage of the recipient, or if the

court finds that termination is necessary to avoid a harsh and inequitable result.[4]

▮▮ The chancellor here sought to add a new twist to the definition of pre-July 1, 1980; that is, that it may also be terminated at some distant future date by which time a change is projected to occur. The burden is upon the spouse seeking the reduction or increase to establish that there is a change in circumstances at the time the modification is sought. *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982). Automatic adjustment up or down is not appropriate. *Levin v. Levin,* 60 Md.App. 325, 482 A.2d 935 (1984). The modification must be based on a present change of circumstances, not on speculation that there will be a change of circumstances.

The chancellor attempts to evade the issue by adding he could reconsider his decision if the standards of living were too disparate. Whether under the post-July 1, 1980 law the chancellor can prospectively terminate indefinite alimony on some fixed future date based on predicted events has not been decided. Furthermore, whether under the post-July 1, 1980 law the chancellor can modify alimony where the circumstances relied on existed at the time of the award has not been decided. Nor will we decide these issues here because this petition simply is not subject to the post-July 1, 1980 alimony law.

The appellant concedes the authority of the chancellor to modify the decree based on the circumstances existing at the time of the hearing and asks only that we strike the provision of the order which will terminate the alimony payments on December 31, 1986. Neither appellant nor appellee appealed the modification amount. For the reasons we have set out above, we hold the chancellor erred; we affirm in part, reverse in part and remand to strike the provision terminating the alimony.

---

**4.** Md.Family Law Code Ann. § 11–108.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTION TO STRIKE FROM ITS DECREE THE PROVISION TERMINATING THE ALIMONY. COSTS TO BE PAID BY APPELLEE.